Oren Alfred BANEK, Petitioner,

v.

J.L. THOMAS, individually and in his official capacity as a Weld County Deputy Sheriff; Thomas C. Reitz, individually and in his official capacity as a Weld County Deputy Sheriff; and Harold L. Andrews, in his official capacity as Weld County Sheriff, Respondents.

No. 84SC352.

Supreme Court of Colorado,
En Banc.

Dec. 22, 1986.
Rehearing Denied Jan. 26, 1987.

McNew and McNew, Jeb McNew, Barbara Scherer McNew, Nocona, Texas, for petitioner.

Halaby & McCrea, Theodore S. Halaby, Thomas L. Kanan, Jonathan A. Cross, Denver, Thomas O. David, Greeley, for respondents.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *Banek v. Thomas*, 697 P.2d 743 (Colo.App.1984), which reversed a judgment in favor of the plaintiff-petitioner, Oren Alfred Banek, on his civil claim for assault and battery against the defendants-respondents, Weld County sheriff deputies Jeffrey L. Thomas and Thomas C. Reitz. In reversing the judgment and remanding the case for a new trial, the court of appeals held that the district court erred in excluding as hearsay a prior judgment of conviction entered against Banek for resisting arrest, which conviction was based on the same transaction as Banek's civil claim for assault and battery. In the court of appeals' view, the excluded evidence was not hearsay and should have been admitted for impeachment purposes. We conclude that the judgment of the prior misdemeanor conviction was hearsay evidence which did not qualify for the hearsay exception of CRE 803(22) pertaining to a judgment of a previous conviction, but that the defendants should have been allowed to cross-examine Banek about his prior conviction for the purpose of impeaching his testimony concerning his nonresistance to the arrest. We accordingly affirm the judgment of the court of appeals.

## I.

On December 14, 1978, at approximately 11:00 p.m., sheriff deputies Thomas and Reitz were on patrol near Greeley, Colorado, when they observed a car being driven by Banek at a speed which the officers

considered too fast for the icy conditions of the road. Banek owned and operated a tavern in Greeley and was returning home at this time. The officers followed Banek for a short distance and then stopped behind him as he pulled his car into the driveway of his residence. Officer Reitz asked Banek for his driver's license and registration. Banek initially refused the officer's request, allegedly because he thought it was a joke. The sequence of events immediately following this part of the confrontation was in considerable dispute.

Banek claimed that as he was reaching into his car for his registration, the officers forced him to the ground, pulled his arm behind his back in an effort to handcuff him, and dislocated his shoulder in the process. The officers, in contrast, claimed that Banek continually refused to produce his license and car registration, that he swung at the officers when informed that he was under arrest and was about to be handcuffed, and that the officers had to physically restrain him in order to place the handcuffs on him.

After handcuffing Banek, the officers took him to the sheriff's department where he was booked on charges of resisting arrest and released on a $250 cash bond. Banek went directly to Weld County Hospital and received treatment for his shoulder. He suffered a dislocation of the shoulder, which was treated without surgery. During the months that followed, Banek experienced five additional incidents of disloca-

tion and eventually underwent reconstructive surgery on his shoulder.

As a result of Banek's altercation with the officers during the arrest, he was charged with resisting arrest, a class 2 misdemeanor carrying a maximum sentence of twelve months imprisonment and a $1,000 fine. §§ 18–8–103 and 18–1–106, 8B C.R.S. (1986).[1] The resistance charge was tried to a jury in county court on June 18, 1979, and Banek was found guilty.

On December 11, 1979, Banek filed a civil action in the Weld County District Court for assault and battery against Reitz and Thomas. Banek sought actual and punitive damages for injuries suffered as a result of allegedly excessive force used by the officers in arresting him on December 14, 1978.[2] The defendants denied liability and as an affirmative defense claimed that they used no more force than was reasonably necessary to overcome Banek's unlawful resistance to his arrest. Immediately prior to the commencement of trial on August 3, 1982, Banek filed a motion for the exclusion of any evidence pertaining to his conviction for resisting arrest, claiming that such evidence was not probative of any material fact in issue, was not proper impeachment evidence, and would be highly prejudicial if admitted. The trial court did not rule on the motion until later in the trial.

During the trial, Banek testified to the following sequence of events concerning the arrest. When he realized that the offi-

---

1. Section 18–8–103, 8B C.R.S. (1986), provides in relevant part as follows:

> (1) A person commits resisting arrest if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:
> (a) Using or threatening to use physical force or violence against the peace officer or another; or
> (b) Using any other means which creates a substantial risk of causing bodily injury to the peace officer or another.
> (2) It is no defense to a prosecution under this section that the peace officer was attempting to make an arrest which in fact was unlawful, if he was acting under color of his official authority, and in attempting to make

the arrest he was not resorting to unreasonable or excessive force giving rise to the right of self-defense. A peace officer acts "under color of his official authority" when, in the regular course of assigned duties, he is called upon to make, and does make, a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made by him.

2. Banek also filed a negligence claim against the sheriff of Weld County, claiming that while he was in custody the officers and agents of the sheriff negligently disregarded his medical problems and ignored his request for medical attention. The jury found against Banek on that claim.

cers were not playing a joke on him, he initially told them that they were not entitled to see his driver's license until they told him the speed at which he had been driving. He then produced his wallet for the officers and was told that his license had expired. As Banek was reaching into his car for his automobile registration, one of the officers pulled him to the ground, and with Banek's face in the ground the officer placed his knee on his back and both officers then pulled Banek's arms behind him in order to handcuff him. Banek at this time felt a sharp pain in his right shoulder and sensed that it had given out. He denied fighting with the officers and stated that while he was on the ground he said to the officers, "Let me up . . . you can handcuff me," but the officers kept shouting, "You're under arrest, . . . you're resisting." On cross-examination, Banek gave the following testimony:

Q Isn't it true, sir, that while you were being patted down, it was at that time Officer Thomas who said you were under arrest?

A No, sir.

Q Isn't it true that as he went to reach for your hand to handcuff you, you then pivoted around and took a swing at Officer Reitz that was standing just to the rear of him?

A No, sir.

Q Isn't it true that at that moment Officer Thomas tried to grab you from behind, and you kept struggling from behind, and he had to kick your foot out

and you both fell to the ground at that time?

A No, sir.

Q None of that is true?

A No, sir.

 \* \* \* \* \* \*

Q You were ready to cooperate with them in every respect as soon as they told you you were under arrest; is that right?

A I had no choice. I had to cooperate with them.

Q That was your intent, right?

A Yes, sir.

Q You're telling the jury that in no way did you ever resist after they told you you were under arrest?

A That answers the question. I did not resist arrest.

■ After Banek gave this testimony, defense counsel, outside the presence of the jury, requested permission to offer into evidence Banek's prior conviction for resisting arrest. Although defense counsel argued that the prior conviction estopped Banek from denying that he resisted, it was clear from the context of the argument that defense counsel was also seeking to cross-examine Banek about the prior conviction in order to impeach his testimony that he had not resisted arrest.[3] The trial court ruled that the prior judgment of conviction did not qualify for the hearsay exception created by CRE 803(22) because the maximum sentence for resisting arrest was not in excess of one year and that the defendants would not be permitted to ask

---

3. Much of the argument before the trial court in regard to the use of Banek's prior conviction for resisting arrest revolved around the defendants' claim that they were seeking to offer this evidence to collaterally estop Banek from claiming that he did not resist arrest. Collateral estoppel, however, is in the nature of an affirmative defense which must be specifically pleaded in an answer. C.R.C.P. 8(c). Since the defendants never pleaded collateral estoppel as an affirmative defense to Banek's claim for assault and battery, the trial court did not address, nor do we in this opinion, whether the doctrine of collateral estoppel, as a matter of substantive law, precluded Banek from litigating in the context of his assault and battery claim his resist-

ance or nonresistance to the arrest. *See Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396 (1973). The defendants, however, did rely upon CRE 803(22) for the proposition that the judgment of prior conviction for resisting arrest was admissible in Banek's civil action as substantive evidence that Banek did resist arrest. The Advisory Committee's Note to Fed.R.Evid. 803(22), with which CRE 803(22) is essentially identical, indicates that when the doctrine of collateral estoppel does not apply so as to render the prior judgment conclusive on the issue of resistance, Fed.R.Evid. 803(22) nonetheless sanctions the admission of the prior judgment as evidence of the truth of the matters asserted in the prior judgment.

any questions or offer any evidence regarding the prior conviction.

Upon conclusion of Banek's evidence, Officers Thomas and Reitz gave their version of the circumstances surrounding the arrest. According to their testimony, Banek protested the initial stop, arguing that the officers had no jurisdiction to stop him on his own property. Banek refused to produce his driver's license and registration until the officers told him the speed at which he had been traveling. When Reitz made two further requests for the license and registration, Banek responded with obscenities. At that point Thomas told Banek that if he didn't produce his license and registration he would be placed under arrest. When Banek again responded with an obscenity Thomas placed him under arrest for failure to exhibit his driver's license on demand. § 42–2–113, 17 C.R.S. (1984). While the officers were conducting a pat down search, Banek placed his hands on the back of his vehicle and spread his legs apart. As Thomas was in the process of bringing Banek's left arm around to the rear of Banek's body in order to handcuff him at the wrists, Banek whirled around and threw a punch at Reitz. A fight ensued during which Thomas was eventually able to kick Banek's foot from under him and bring him to the ground. The officers then wrestled Banek under control. Due to Banek's upper body strength, his wide shoulders, and his continued struggling, they had to link together two sets of handcuffs in order to cuff both wrists behind his back.

The jury returned verdicts in favor of Banek, assessed his compensatory damages at $75,000, and imposed $10,000 punitive damages against each defendant. The district court entered judgment on the jury verdicts and denied the defendants' motion for a new trial.[4]

The defendants appealed, and the court of appeals reversed the judgment and or-

dered a new trial. It held that Banek's prior misdemeanor conviction did not qualify as a hearsay statement under CRE 801 and hence the hearsay exception of 803(22) was inapplicable to the case, that evidence of the prior conviction was nonetheless admissible to impeach Banek's testimony that he did not resist arrest, and that the trial court's exclusion of this evidence could not be deemed harmless error. We granted certiorari to consider the correctness of the court of appeals' decision. We conclude that the judgment of the prior misdemeanor conviction was hearsay evidence, that such evidence did not qualify for the hearsay exception created by CRE 803(22) for a previous judgment of conviction, and that reversible error occurred when the trial court prohibited the defendants from impeaching Banek by means of his prior misdemeanor conviction. We thus affirm the judgment and remand the case for a new trial.

## II.

"Hearsay" is defined as a "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). A hearsay statement is not admissible in evidence except as provided by the Colorado Rules of Evidence or by the "civil and criminal procedural rules applicable to courts of Colorado or by any statutes of the State of Colorado." CRE 802.

■ Evidence of Banek's prior judgment of conviction fell within the definition of hearsay under CRE 801 because (1) the judgment of conviction was a statement by the court that tried Banek for resisting arrest that he was guilty of that offense, and (2) the judgment of conviction was offered by the defendants to prove the truth of the matter asserted therein—that is, that Banek did indeed resist arrest on December 14, 1978. *See, e.g.,* 4 J. Wein-

---

**4.** The issue of the impeachment use of Banek's prior conviction was again argued at length during the hearing on the motion for a new trial. The court's statements during the hearing quite clearly show that the court understood

defense counsel's argument at trial to include both the substantive use of the prior conviction pursuant to CRE 803(22) and the impeachment use to contradict Banek's testimony concerning nonresistance.

stein and M. Berger, *Weinstein's Evidence* 803–350 (1985). As such, the judgment of Banek's prior conviction was inadmissible as substantive evidence unless it qualified under a recognized hearsay exception.

■ CRE 803(22) creates a hearsay exception for a judgment of previous conviction, and it is that exception that is arguably applicable here. The exception, as defined by CRE 803(22), is as follows:

> Evidence of a final judgment, entered after a trial or upon a plea of guilty or *nolo contendere*, adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility.

The Advisory Committee's Note to Fed.R. Evid. 803(22), to which the Colorado version is basically identical,[5] states that "[p]ractical considerations require exclusion of convictions of minor offenses, not because the administration of justice in its lower echelons must be inferior, but because motivation to defend at this level is often minimal or nonexistent." The exception, therefore, includes only judgments of conviction for offenses carrying a penalty in excess of one year imprisonment. Since the crime of resisting arrest is a misdemeanor punishable by a maximum sentence of one year and $1,000 fine, §§ 18–8–103 and 18–1–106, 8B C.R.S. (1986), evidence of Banek's prior conviction for this offense failed to satisfy the terms of CRE 803(22) and was thus not admissible under that hearsay exception.[6]

### III.

Our conclusion that evidence of Banek's prior conviction was not admissible under CRE 803(22) to prove the truth of the matter asserted in the prior judgment—that Banek did resist arrest—does not dispose of the defendants' claim that this evidence should nonetheless have been admitted for the limited purpose of impeaching Banek's testimony regarding his nonresistance to the arrest. It is this issue we now address.

■ CRE 611(b) states that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Inquiry on cross-examination regarding a witness's credibility extends to those matters that explain, modify, discredit, or otherwise shed light upon the testimony of the witness without regard to whether such matters are also supportive of the adversary's case in chief. *See, e.g., United States v. Palmer*, 536 F.2d 1278 (9th Cir. 1976); *United States v. Dillon*, 436 F.2d 1093 (5th Cir.1971); *People v. Jones*, 675 P.2d 9 (Colo.1984). While the scope of cross-examination is generally a matter left to the discretion of the trial court, an abuse of discretion is more likely to occur in those cases when the court's restriction relates to the subject matter of the examination rather than to the extent of permissible exploration. *See, e.g., United States v. Brady*, 561 F.2d 1319 (9th Cir.1977); *United States v. Wolfson*, 573 F.2d 216 (5th Cir.1978); *United States v. Mayer*, 556 F.2d 245 (5th Cir.1977).

■ Our case law recognizes that evidence of a prior arrest or criminal charge may be admitted for impeachment purposes when the witness on direct examination has given specific contrary testimony which, if uncontradicted, would likely result in the trier of fact receiving a false or misleading account of the matter which the witness has placed into evidence. For example, in *People v. Rubanowitz*, 688 P.2d 231 (Colo.1984), we upheld the trial court's

---

**5.** The only difference between Fed.R.Evid. 803(22) and CRE 803(22) is that a plea of *nolo contendere* is excluded from the federal rule.

**6.** Since Banek's prior conviction was for a misdemeanor, it was not admissible under section 13–90–101, 6 C.R.S. (1973), which expressly authorizes the use of a prior *felony* conviction for the limited purpose of attacking the credibility of the witness.

ruling permitting cross-examination of the defendant, who was on trial for child abuse and other crimes, concerning a 1967 arrest for offering an undercover police officer a girl for sexual purposes, after the defendant had testified on direct examination that during the mid–1960's he had been running a health club out of which he helped troubled children. After expressly noting the general prohibition against evidence of prior acts of misconduct to prove the character of an accused, we stated:

> The prohibition against the admissibility of such evidence for that purpose, however, does not prevent the cross-examination of an adverse party or witness concerning the truthfulness of specific substantive direct testimony.... While this distinction may be difficult to apply in many contexts, enforcement is essential to that aspect of our adversary system which depends upon vigorous challenges to testimony deemed false or impermissibly misleading.

*Id.* at 246. *See also People v. Mejia,* 188 Colo. 120, 534 P.2d 779 (1975) (trial court properly allowed cross-examination of defendant regarding an earlier arrest for possession of marijuana after defendant testified on direct examination that, except for drunkenness, he had never been arrested); *Molton v. People,* 118 Colo. 147, 193 P.2d 271 (1948) (trial court properly allowed prosecution to question defendant about earlier rape charge after defendant stated on direct examination that he had never been in trouble); *People v. Terranova,* 38 Colo.App. 476, 563 P.2d 363 (1976) (defendant who testified that he had never been in trouble could be cross-examined regarding his prior arrests).

▪ While in the above cases the cross-examination related to a prior arrest or charge after the witness had specifically denied the prior misconduct, we know of no principled basis to disallow cross-examination regarding a prior misdemeanor conviction under circumstances where the witness has unequivocally denied the critically operative fact on which the prior conviction was based. We recognize, of course, that the distinction between excluding evidence for one purpose and admitting that same evidence for another may be a subtle one at times, but it is a distinction that our case law has recognized and applied in various contexts. *See, e.g., People v. Gomez,* 184 Colo. 319, 519 P.2d 1191 (1974) (recent complaint of sexual offense admissible not to prove truth of matter asserted in complaint but as corroborative evidence of victim's testimony that sexual assault occurred); *People v. Burress,* 183 Colo. 146, 515 P.2d 460 (1973) (in criminal prosecution for assault with deadly weapon, statement made to defendant by third party prior to the assault that victim was violent and had beaten a police officer not admissible to prove truth of statement but admissible to establish defendant's state of mind at time of alleged crime); *Bishop v. People,* 165 Colo. 423, 439 P.2d 342 (1968) (recognizing rule, subsequently changed by CRE 801(d)(1)(A), that prior inconsistent statements admissible not to prove facts asserted but to discredit witness's credibility); *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959) (recognizing rule that evidence of prior criminal acts not admissible to prove general bad character of accused but may be admissible for limited purpose, such as identity, plan, scheme, design). The fact that the testimony sought to be impeached may have been given during cross-examination itself should not affect the cross-examining party's opportunity to impeach, since the purpose of cross-examination on such testimony is to prevent the adverse party from putting before the trier of fact a false, misleading, or one-sided account of the matters in dispute. *See United States v. Havens,* 446 U.S. 620, 626–27, 100 S.Ct. 1912, 1916–17, 64 L.Ed.2d 559 (1980); *Brown v. United States,* 356 U.S. 148, 155, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958).

▪ In the instant case, we are satisfied that the conditions supporting the limited admissibility of a prior conviction for impeachment purposes were satisfied. The only plausible interpretation of Banek's direct testimony, when considered in its totality, is that he was unequivocally denying having offered any resistance to the offi-

cers on the evening of December 14, 1978. Furthermore, the record clearly shows that Banek specifically denied on cross-examination that he resisted arrest. Under the circumstances present here, therefore, the trial court should have permitted the defendants to cross-examine Banek about his prior conviction for the limited purpose of impeaching or discrediting his prior testimony that he offered no resistance to the arrest. The prohibition of such cross-examination left Banek's testimony virtually unshaken on a critical issue in the case— that is, whether he resisted the arrest—and thus resulted in the jury receiving what might well have been a misleading version of what actually transpired. The trial court's evidentiary ruling, therefore, was error.[7]

## IV.

 We are left with the question of whether the error in this case should be deemed harmless or instead requires a new trial. The erroneous exclusion of evidence will result in a reversal only if the exclusion affected a substantial right of a party. CRE 103(a); C.A.R 35(e); C.R.C.P. 61. This proposition is simply a recognition of the fact that minor mistakes inevitably occur in the course of a trial since a perfect trial is more often than not a virtual impossibility. *Callis v. People,* 692 P.2d 1045, 1053 (Colo.1984); *People v. Taylor,* 197 Colo. 161, 164, 591 P.2d 1017, 1019 (1979). An error affects a substantial right when it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself. *Tevlin v. People,* 715 P.2d 338, 342 (Colo.1986); *People v. Quintana,* 665 P.2d 605 (Colo.1983); *see also United States v. Lane,* — U.S. —, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986); *Sowder v. Inhelder,* 119 Colo. 196, 201 P.2d 533 (1948). We are satisfied that the error in this case cannot be deemed harmless and requires a new trial.

The effect of the trial court's evidentiary ruling was to prohibit the defendants from impeaching Banek on the critical issue of his asserted nonresistance to the arrest. Although Banek's version of the arrest was controverted by the testimony of the arresting officers, the fact remains that the jury was confronted with a choice between Banek's version of the arrest and that of the officers. The verdicts in the case clearly demonstrate that the jury chose to believe Banek's testimony. We recognize that even if the jury were to determine that Banek did resist arrest, that determination would not provide a complete defense to a claim of assault and battery based on unnecessary and excessive force in effecting an arrest. § 18–1–707(1), 8B C.R.S. (1986).[8] Such a determination, however, would certainly play a critical role in resolving whether the force employed by the officer was reasonable and necessary under the circumstances.

 Banek's testimony that he did not resist arrest obviously left the jury with the impression that he did nothing to war-

---

**7.** Generally, extrinsic evidence is not admissible to contradict the testimony of a witness on a collateral matter. A matter is considered collateral when it has no independent significance to the case and thus would not be independently provable regardless of the impeachment. *See Bishop v. People,* 165 Colo. 423, 428, 439 P.2d 342, 344–45 (1968); *McCormick on Evidence* § 47, at 110 (E. Cleary 3d ed. 1984). In contrast, a matter is not collateral if it would have been independently provable regardless of the impeachment. *McCormick, id.* at 110; M. Graham, *Handbook of Fed.Evid.* § 607.2, at 417 (2d ed. 1986). In this case, the issue of whether Banek resisted arrest was by no means a collateral issue, since it was directly relevant to the central issue of the officers' justification in using force to effect the arrest. *See People v.*

*Jones,* 675 P.2d 9, 16–17 (Colo.1984). If upon retrial Banek is cross-examined about the fact of his prior conviction for resisting arrest and denies such conviction, then the defendants should be allowed to offer extrinsic evidence to prove the conviction.

**8.** Section 18–1–707(1), 8B C.R.S. (1986), provides that an officer is justified in using reasonable and appropriate physical force in making an arrest when and to the extent that he reasonably believes such force is necessary to effect the arrest or to defend himself against what he reasonably believes to be the use or imminent use of physical force employed against him in effecting or attempting to effect the arrest.

rant the use of any force and that the officers' use of force in handcuffing him was unjustified and excessive. It might well be that Banek did not resist arrest and that the officers were not justified in using the force employed against him in effecting his arrest. That question, however, should have been decided only after the defendants were afforded the opportunity of using Banek's prior conviction for resisting arrest to discredit his testimony that he did not resist arrest. Given the closely contested issues of liability in this case, the resolution of which centered on the jury's assessment of the credibility of the parties, we cannot say that the erroneous evidentiary ruling of the trial court was harmless error.

The judgment of the court of appeals reversing the judgment in favor of Banek and ordering a new trial is affirmed.

ROVIRA, J., does not participate.