**January 30, 1992**

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| In the Matter of the Estate of ) | APPEAL NOS. 90-024 and 90-030 |
| ) | (consolidated) |
| ANTONIO GOGUE BARCINAS, ) | CIVIL ACTION NO. 89-850 |
| ) | |
| Deceased. ) | OPINION |
| _____) | |

Argued and Submitted January 31, 1991

Counsel for Appellant/Appellee
   Alejandro B. Barcinas:[1]

John A. Manglona
White, Novo-Gradac & Manglona
P.O. Box 222 CHRB
Saipan, MP 96950

Counsel for Appellant
   Florence B. Serville:

James H. Grizzard
Caller Box PPP, Suite 374
Saipan, MP 96950

Counsel for Appellees Juan B.
   Barcinas, Jose A. Barcinas
   and Francisca B. Mendiola:

Randall T. Fennell
Carlsmith, Ball, Wichman,
Murray, Case, Mukai & Ichiki
P.O. Box 241 CHRB
Saipan, MP 96950

Counsel for Appellee
   Heirs of Maria B. Atalig:

Pedro M. Atalig
P.O. Box 332 CHRB
Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

These consolidated appeals from a probate proceeding raise

---

[1]Alejandro B. Barcinas is an appellee with respect to one claim on appeal raised by appellant Florence B. Serville.

issues concerning exclusion of evidence and recovery of certain expenses by the initiator of the probate.

## I.

## BACKGROUND

The decedent, Antonio Gogue Barcinas (hereafter "Antonio"), died intestate on January 19, 1952. He left a parcel of 538,556 square meters of land in the northern area of the island of Rota known as Inayan (hereafter "Inayan property" or "property").

Antonio's wife, Antonia Blanco Barcinas, predeceased him. At the time of his death, Antonio had eight children. Six of his children are also now deceased.

In 1963, Antonio Blanco Barcinas--one of the deceased children--filed a land claim with the Trust Territory Government to determine ownership of the Inayan property. Based on this claim, the Land Title Office issued Title Determination 501, certifying that the "heirs of Antonio Gogue Barcinas", represented by Antonio Blanco Barcinas as land trustee, owned the Inayan property. The decision was not appealed.

In 1989, the NMI Land Commission held a land registration proceeding concerning the Inayan property. Following a hearing, the Commission issued a certificate of title (dated August 11, 1989) affirming the Trust Territory determination of ownership.

On August 29, 1989, appellee Florence Serville (hereafter "Florence"), Antonio's granddaughter through a deceased son, initiated the probate at bar by filing a petition for letters of administration. Florence, a resident of Guam, sought to be

appointed as administratrix.

At a hearing held October 5, 1989, one of Antonio's two surviving children, appellant Alejandro B. Barcinas (hereafter "Alejandro"), appeared and requested appointment as administrator. Florence acquiesced, and Alejandro was appointed.

Notice to creditors was duly filed and published.

On October 27, 1989, Alejandro filed an inventory of the estate. Florence filed a claim against the estate for $6,149.58 for expenses incurred in initiating the probate. Her attorney filed a claim against the estate for attorney's fees and costs.

Alejandro rejected both claims.

On January 10, 1990, Alejandro filed a petition for a decree of final distribution. He proposed that the Inayan property be divided among only five of Antonio's eight children, including himself.[2]

Alejandro's proposal was based on his contention that Antonio intended certain _inter vivos_ transfers of land he had made to three of his children to be advancements upon their inheritences--precluding them or their heirs from sharing in the Inayan property.

One of the three children who would have been denied a share in the Inayan property under Alejandro's proposal was Maria B. Atalig. Her heirs, appellees in this action (hereafter "heirs of Maria"), filed an objection to the proposal.

Other heirs who would likewise have been denied a share in the
_____

[2]Since Alejandro was the only surviving child within this group of five, the petition provided for distribution per stirpes to the heirs of the other children.

440

property under the proposed distribution also objected. They included Juan B. Barcinas (Antonio's other surviving child), Jose A. Barcinas and Francisca B. Mendiola (heirs of a deceased child). Juan, Jose and Francisca (also appellees in this action) filed a motion below to disallow Alejandro's petition. Hearings on the motion were held during March and April of 1990.

## TRIAL COURT'S DISTRIBUTION OF INAYAN PROPERTY

### First Ruling

On April 24, 1990, the trial court issued a bench decision incorporating four points.[3]

First, the court subtracted 1,858 square meters of the Inayan property and gave 929 square meters each to the heirs of Maria and the heirs of Domingo B. Barcinas (another of Antonio's deceased children).

Second, it divided the remainder of the Inayan property equally among all of Antonio's heirs.[4]

Third, the court directed the heirs to meet and agree upon a plan to divide the Inayan property, and notified them that if they did not agree to a settlement on or before May 29, 1990, each heir's share would be determined by lot.

Finally, the parties were ordered to return to court on May 29, 1990, at which time the settlement and Florence's claim for

---

[3]This decision was formalized in an order filed April 25, 1990.

[4]I.e., per stirpes, in eight equal shares among his children (or their heirs). This point was clarified in the decree issued May 31, 1990.

expenses were to be addressed.

Alejandro appealed this decision on May 24, 1990.

At the scheduled hearing on May 29, the court was advised that the heirs had not reached agreement upon the division of the Inayan property and that Alejandro had filed an appeal.

Second Ruling

The court issued a second ruling on May 31, 1990.

It divided the Inayan property according to its earlier decision, with the clarification that the "eight heirs" were to share in the property "as tenants in common with equal one-eighth individual interest."[5] In re Estate of Barcinas, Civil Action No. 89-850, decree at 3 (N.M.I. Super. Ct. May 31, 1990).

The court also held that Florence was not entitled to recover all of the expenses she claimed in initiating the probate, but ruled that she recover attorney's fees ($525) and court filing and publication fees ($60 and $73.75, respectively).

Alejandro and another heir appealed this decision on June 26, 1990.[6] Florence appealed the decision on June 28, 1990.

The appeals have been consolidated.

II.

EXCLUSION OF HEARSAY TESTIMONY

█Alejandro and Florence contend that the trial court erred in

---

[5]Apart from the 1,858 square meters reserved for the heirs of Maria and the heirs of Domingo B. Barcinas.

[6]This appeal was "consolidated" with the earlier appeal.

excluding certain hearsay testimony at the hearing on the proposed distribution of the Inayan property. The testimony was an account of how Antonio allegedly wanted the property to be distributed among his children.

At the hearing, a witness testified that under Chamorro customary law land trustees should inform their brothers and sisters of a decedent's wishes concerning division of property, and that the decedent's wishes should be followed. Alejandro then testified that two deceased brothers (both of whom were land trustees for the Inayan property) told him that they had been told by Antonio that he wanted the property distributed only to the five children who had not already received property from him. Upon objection, this testimony was stricken. The court ruled that it was inadmissible hearsay within hearsay.

Alejandro and Florence argue that the testimony was admissible under both Chamorro customary law and the Commonwealth Rules of Evidence, and that--even if the testimony could be excluded--the appellees failed to make a timely objection at the hearing.

We hold that the objection was timely. However, we also hold that while the testimony was indeed hearsay within hearsay, it was admissible under Com.R.Evid. 805: "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

Each part of the combined statements conforms with the exception provided in Com.R.Evid. 803(19):

443

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(19) Reputation concerning personal or family history. Reputation among members of his family by blood, adoption, or marriage, or among his associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, <u>or other similar fact of his personal or family history</u>.

. . . .

(Emphasis added.) This exception was invoked by Alejandro at the hearing below as a basis for admitting the evidence.[7] In <u>Guerrero v. Guerrero</u>, No. 90-018 (N.M.I. Mar. 18, 1991), a decision issued after this case was argued on appeal, we held that Com.R.Evid. 803(19) permits hearsay testimony in proving title to land. Admission of hearsay to prove the wishes of a decedent concerning division of his property[8] is necessary because there is often no other available evidence. Historically, under local customary law no writing was necessary to devise property. Property is still passed orally by <u>partida</u> under Chamorro custom.

---

[7]Although Alejandro has not specifically raised Com.R.Evid. 803(19) on appeal, he does invoke Com.R.Evid. 804(b)(4), a similar exception permitting hearsay evidence concerning personal or family history when the declarant is unavailable. Rule 804(b)(4) "complements the . . . [exception] for <u>reputation</u> concerning personal or family history which is created by Rule 803(19)." 4 D. Louisell & C. Miller, <u>Federal Evidence</u> § 490 (1980) (emphasis in the original).

[8]The wishes and intent of the decedent form the basis of intestate succession under Chamorro custom and, in the absence of a statute to the contrary, should be followed. <u>In re Estate of Cabrera</u>, No. 90-044 (N.M.I. July 31, 1991).

The legality of this practice has long been upheld.[9]

In addition, it is not uncommon in the NMI for heirs to initiate a probate of a decedent's estate many years after the decedent's death. See, e.g., In re Estate of Rofag, No. 89-019 (N.M.I. Feb. 22, 1991) (decedent died in 1944; probate initiated in 1989); In re Estate of Dela Cruz, No. 90-023 (N.M.I. Feb. 7, 1991) (decedent died in 1948; probate initiated in 1987). We note that Florence initiated the probate in this case thirty-seven years after Antonio's death. Under the circumstances, "live testimony by persons with firsthand knowledge may be difficult to obtain, since relatively few persons have such knowledge and the critical events are likely to have occurred in the distant past." 4 D. Louisell & C. Miller, Federal Evidence § 467 (1980) (analysis of rationale behind Fed.R.Evid. 803(19), identical to Com.R.Evid. 803(19)).

Testimony offered under Com.R.Evid. 803(19) should describe general repute. Id. Antonio's testimony concerning reputation of title to land within the Barcinas family was corroborated through the testimony of another witness: Florida M. Barcinas, wife of one of the two deceased sons who served as land trustees, testified that she heard Antonio tell her husband that he wished the Inayan

---

[9]Today, the NMI Probate Code recognizes the validity of traditional oral wills or partidas. See 8 CMC § 2302 ("[n]othing in this chapter shall prevent the making of a will or partida in accordance with the historical traditions and customs of the Northern Mariana Islands, be it Chamorro or Carolinian custom, nor shall anything in this chapter affect the validity of a will or partida made in accordance with such customary law"). So, too, does the NMI Statute of Frauds. See 2 CMC § 4916 ("[t]his article shall not apply to a Partida performed pursuant to custom of the Northern Mariana Islands").

property to be divided among only five of his children. This evidence was admitted. <u>Cf</u>. Guerrero, <u>supra</u> (testimony of two brothers concerning ownership of land, combined with other evidence, sufficient to establish reputation in community under Com.R.Evid. 803(20)).

The trial court erred in excluding Alejandro's testimony. That is not, however, the end of our analysis.

■ "In order for this Court to find reversible error, we must find that by excluding . . . evidence, a substantial right of [an] appellant is affected." <u>Pangelinan v. Unknown Heirs of Mangarero</u>, No. 90-015, slip op. at 11 (N.M.I. Nov. 1, 1990) (citing Com.R.Evid. 103(a)). "An error affects a substantial right when it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." <u>Banek v. Thomas</u>, 733 P.2d 1171, 1178 (Colo. 1986).

■ The transcript of the trial court's ruling on the objection to Alejandro's testimony is revealing:

> Under the rules and the decisions of the Court in prior cases, it is my duty at this time to disallow that evidence. . . . I personally do not like that ruling but my personal feeling has no room in this courtroom. I have rules to follow and in this case that is my ruling. All I hope is that our Legislature amend[s] the Probate Code in this matter so that the Rules of Evidence shall not apply in Probate matters. For the time being, I have to sustain the objection and that part of the testimony shall be stricken from the record.

TR at 68-69 (parenthetical references to "Chamorro spoken here" deleted). After receiving comments from counsel, the court continued:

446

I have looked at the pros and cons of my decision. The Court stands by its decision. The objection is sustained. That part of the testimony is stricken. Let's proceed, and I hope that the Supreme Court reverses me on this issue. Then I will follow.

TR at 78.[10]

As noted above, Florida M. Barcinas testified that Antonio intended that the Inayan property be divided among only five children. On the other hand, another witness, Jose A. Barcinas, testified that Antonio intended the property to be divided among all eight of his children. The record indicates that the trial court was very much aware of the conflicting evidence:

> [T]he thrust of the court's ruling is that I do not know what the wish of the decedent was. Was the land to be divided into five? That's from Mrs. Florida. Was the land going to be divided into eight? That's from witness Jose [A. Barcinas]. So which one is which? If there's no testimony from Jose, then the land will be divided into five . . . .

TR at 342, 343.

Given the court's remarks, we may say with "fair assurance" that the its error in excluding the evidence substantially influenced the outcome of the case. Banek, supra.

We therefore reverse the court's decision to exclude Alejandro's testimony.

### FLORENCE'S CLAIMS FOR REIMBURSEMENT

Florence contends that the trial court erred in denying her claims for certain expenses she incurred in initiating the probate, including air fare ($2,134.98), room and board ($703.30), car

---

[10]Later, in denying a motion for reconsideration, the court reiterated his wish that this Court reverse him. TR at 163.

rental ($400.10), "per diem" ($1,470), "wages" ($800) and photocopying charges ($35). Total: $5,543.28.

Alejandro and the appellees argue that the trial court was correct in denying reimbursement for these claims.

Noting that the probate of her grandfather's estate was not commenced until thirty-seven years after his death, Florence argues that without her efforts, "the heirs might well still be sitting back accomplishing nothing." Florence's brief at 7. Florence, at the time a resident of Guam, "had to travel to Rota, research the land records to determine [Antonio's] assets . . . travel to Saipan to make arrangements for an attorney, and in general engage in a great expenditure of activity, time and money in order to start this action." Id.

In denying the contested expenditures, the trial court ruled:

> Rule 14 of the Rules of Probate Procedure[] directs that a person who is a "resident" of the Commonwealth may petition for letters of Administration. The rationale behind such a rule is the expeditious handling of probate matters and nominal expense to the estate being probated. There may be situations where a non-resident will be permitted to be issued letters of administration. This is not the situation in this case. If this Court is to allow . . . Mrs. Serville's expenses in [their] entirety, then it would have to allow other parties from Rota/ Tinian to recover their expenses too. Clearly, she is entitled to recover attorney's fees, and court related costs.

May 31, 1990, decree at 2.

Essentially, Florence argues that her expenses were incurred in good faith and good judgment in the care of the estate, that they benefitted the estate, and that they would have been incurred by any person who initiated the probate and was later appointed as

448

administrator.

An estate is primarily liable for those reasonable expenses of administration which the court finds to have been incurred for the benefit of the estate. In re Estate of McKeen, 573 P.2d 936 (Colo. App. 1977). "Absent manifest error, the conclusion of a trial court should not be disturbed on appeal." 573 P.2d at 938.

The record reveals no manifest error on the part of the trial court. The court could legitimately conclude that some of Florence's claimed expenses were not reasonable.[11] Its decision will stand.

## III.

Accordingly, the court's decree is REVERSED and the case is REMANDED for a new hearing consistent with this decision.

Entered this _30th_ day of January, 1992.

JOSE S. DELA CRUZ, Chief Justice

RAMON G. VILLAGOMEZ, Justice

JESUS C. BORJA, Justice

---

[11]We note, in passing, that among these claims are expenses for flights to destinations in mainland United States (Los Angeles and Houston). No justification for these claims has been asserted on appeal. Little justification has been asserted for other claims denied by the trial court.