24CA1672 Marriage of Flohr 06-05-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1672
Douglas County District Court No. 22DR30401
Honorable Robert Lung, Judge

---

In re the Marriage of

Dawn Marie Flohr, n/k/a Dawn Marie Rannells,

Appellee,

and

Cory James Flohr,

Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE GOMEZ
Freyre and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 5, 2025

---

Willoughby & Associates, LLC, Sara M. Cates, Golden, Colorado, for Appellee

Suazo Law, LLC, G. Aaron Suazo, Ian Z. Shea, Littleton, Colorado, for Appellant

¶ 1 Cory James Flohr (husband) appeals the entry of a permanent protection order (PPO) against him, protecting Dawn Marie Flohr, now known as Dawn Marie Rannells (wife). We affirm.

## I. Background

¶ 2 The parties married in 2015 and have two minor children. In June 2022, wife petitioned to dissolve the parties' marriage and concurrently moved for the entry of a civil protection order against husband protecting both her and the children. In seeking a protection order, wife cited domestic abuse and physical assault or threats. The district court entered a temporary protection order listing wife and the two children as protected persons, and the parties agreed to keep that order in place until their July 2024 permanent orders hearing. They also agreed to have the potential entry of a PPO addressed at the permanent orders hearing.

¶ 3 In the meantime, the district court appointed a Parental Responsibility Evaluator (PRE) to make recommendations as to an allocation of parental responsibilities. The court also appointed a special master to resolve the parties' disputes as to the PRE's access to certain private information.

¶ 4 Because the parties settled all matters attendant to the dissolution of their marriage before the permanent orders hearing, the district court set a PPO hearing for August 2024. Before the hearing, wife agreed to remove the children from the protection order.

¶ 5 After taking evidence, the district court entered a PPO protecting wife from husband. The court found that husband had committed acts constituting grounds for the issuance of a protection order based on assaults, threats of bodily harm, and domestic abuse, which included both verbal and physical harassment. The court credited the testimony of both the PRE and wife as to husband's pattern of abusive conduct and was persuaded by an audio recording in which it was "very clear . . . that h[usband] [wa]s physically assaulting [wife]."

¶ 6 The district court also found that husband would continue to commit acts constituting grounds for the issuance of a protection order unless restrained. The court reasoned that the duration of husband's abusive conduct and his ongoing denial of such conduct meant that he was likely to continue abusing wife.

## II.     Statutory Framework

¶ 7      To issue a PPO, a court must find by a preponderance of the evidence that the person to be restrained (1) "has committed acts constituting grounds for issuance of a civil protection order" and (2) "unless restrained will continue to commit such acts or acts designed to intimidate or retaliate against the protected person." § 13-14-106(1)(a), C.R.S. 2024.  As relevant here, a court may issue a protection order to prevent assaults, threatened bodily harm, and domestic abuse.  § 13-14-104.5(1)(a), C.R.S. 2024.

## III.     Preservation, Waiver, and Invited Error

¶ 8      In a civil case, "issues not raised in or decided by a lower court will not be addressed for the first time on appeal." *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18. Therefore, "[a] party's mere opposition to its adversary's request . . . does not preserve all potential avenues for relief on appeal.  We review only the specific arguments a party pursued before the district court." *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011).  To preserve an issue for appellate review, a party must raise an argument "to such a degree that the court has the opportunity to rule on it." *Madalena v.*

3

*Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50 (quoting *Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21); *see also In re Marriage of Aragon*, 2019 COA 76, ¶ 27.

¶ 9 A party may also waive an issue by intentionally relinquishing a known right. *Bernache v. Brown*, 2020 COA 106, ¶ 10.

> Waiver may be express, as when a party states its intent to abandon an existing right, or implied, as when a party engages in conduct which manifests an intent to relinquish the right or acts inconsistently with its assertion.

*In re Marriage of Hill*, 166 P.3d 269, 273 (Colo. App. 2007).

¶ 10 Moreover, "[t]he doctrine of invited error precludes a party from appealing an error that the party invited or injected into the case." *In re Marriage of O'Connor*, 2023 COA 35, ¶ 24. "A party's affirmative action during litigation triggers this doctrine and usually bars appellate review of alleged error arising from such action." *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 65 (Colo. App. 2004).

### IV. Treatment of Husband's Mental Health Information

¶ 11 Husband first argues that the PPO must be reversed because privileged and confidential information concerning his mental health was improperly provided to the PRE and thereby injected

into the PPO proceedings. We reject husband's contentions as waived or unpreserved.

### A. Special Master's Rulings on Mental Health Evaluations

¶ 12    Husband specifically asserts that the special master erred by ordering him to provide the PRE with (1) certain Federal Aviation Administration (FAA) mental health evaluations, which the FAA had conducted in reevaluating husband's pilot's license; and (2) mental health evaluations conducted during a probate dispute involving husband and his mother's estate. Husband argues that his psychotherapist-patient privilege under section 13-90-107(1)(g), C.R.S. 2024, was thus improperly abrogated. We conclude, however, that husband has waived the issue.

¶ 13    Pursuant to C.R.C.P. 53(a)(1)(C), governing the appointment of a special master to address pretrial matters, the district court empowered the special master to resolve the parties' disputes as to the PRE's access to the FAA and probate evaluations. In her corresponding report and recommendations, the special master disagreed that the evaluations should be withheld from the PRE based on husband's privacy interests and instead recommended that the evaluations should be produced, subject to certain

5

redactions.  After holding an additional hearing with the parties, the special master issued an amended report and recommendations that again recommended the production of the evaluations, with redactions.  The district court then approved the special master's amended report and recommendations.

¶ 14   We agree with wife that husband has waived any challenge to the special master's recommendations as to the production of the FAA and probate evaluations.  The final sentence of the special master's amended report and recommendations states, "The parties agreed at [a] hearing held 7/21/23 to accept the findings and redact those portions mentioned in the recommendation and exchange those documents within [seven] days of the date of this recommendation."  Consistent with that agreement, husband never objected to the special master's recommendations.  *See* C.R.C.P. 53(f)(2) (providing a fourteen-day window to file objections to a special master's recommendations when the special master held a hearing).  Thus, we conclude that husband's agreement to the findings, combined with his lack of an objection under C.R.C.P. 53(f)(2), constituted a waiver of his right to challenge the special

master's recommendations. *See Bernache*, ¶ 10; *Hill,* 166 P.3d at 273.

¶ 15    Husband asserts that he only stipulated to the special master's "findings," as opposed to legal conclusions, and therefore he may still challenge on appeal the special master's recommendation that he produce the evaluations. Yet, husband doesn't dispute that he agreed to produce the partially redacted evaluations within seven days of the special master's amended recommendations. And we conclude that such an agreement to produce the documents *before* the district court review process could play out under C.R.C.P. 53(f) was inconsistent with husband's right to object under that rule, and thus he has waived any challenge to the special master's ruling. *See Hill,* 166 P.3d at 273 (waiver may be implied from acts inconsistent with an assertion of a party's right).

### B.    Husband's Treating Psychologist

¶ 16    As best as we can discern, husband also asserts that the district court's approval of the special master's recommendations likewise resulted in the erroneous abrogation of his psychotherapist-patient privilege as to his treating psychologist,

7

who provided information to the PRE and testified at the PPO hearing. But we again hold that husband failed to preserve or otherwise invited the alleged errors.

¶ 17 The district court's order appointing the special master stated that the PRE's "[f]ull access to all therapists that have been involved with the family," including "unrestricted releases of information" as to those treatment providers, was one of the disputes for the special master to resolve. But the special master's recommendations indicated that, since her appointment, the parties had resolved all their disputes except for the production of the FAA and probate evaluations. Those were the only issues the special master addressed, and the special master thus never made any recommendations requiring husband's treating psychologist to produce any documents or otherwise testify. Accordingly, we see no indication that any arguments concerning husband's treating psychologist were set forth and then ruled on in the proceedings before the special master. Thus, such issues are not preserved for our appellate review. *See Melat*, ¶ 18.

¶ 18 Husband asserts that the alleged errors regarding the involvement of his treating psychologist were nonetheless preserved

because the district court stated in a minute order that "A CHILD PROFESSIONAL WILL ALWAYS HAVE ACCESS TO ALL ISSUES IN A CASE." But because husband challenges that minute order for the first time in his reply brief, we decline to address his contention that the minute order improperly abrogated his psychotherapist-patient privilege. *See In re Marriage of Herold*, 2021 COA 16, ¶ 14 (declining to address an argument not raised in a party's opening brief).

¶ 19 Finally, to the extent that husband claims that the testimony of his treating psychologist somehow tainted the PPO hearing, we observe that any possible error was invited by husband given that *husband himself* called his psychologist as a witness. *See Vista Resorts*, 117 P.3d at 65. We also disagree with husband that he was forced to call his psychologist as a matter of strategy to mitigate the prior improper abrogation of his psychotherapist-patient privilege because he hasn't identified any place in the record where he asserted that privilege. *See Madalena*, ¶ 50.

## V. Admission of PRE Report at the PPO Hearing and Issue of Separate Presiding Judicial Officer

¶ 20    We similarly reject as unpreserved husband's contentions that (1) the introduction of the PRE report and the involvement of the PRE in the PPO proceedings was inherently improper and violative of his due process rights and (2) a judicial officer different than the judge presiding over the parties' domestic relations case should have presided over the PPO hearing.

¶ 21    Specifically, husband failed to object when wife called the PRE as a witness at the PPO hearing, and he stipulated to the admission of the PRE report.  Likewise, at no point did husband ever seek the recusal of the presiding judge or ask that the PPO hearing be assigned to a different judicial officer.  Therefore, husband has failed to preserve his contentions of error as to those issues.  *See Melat,* ¶ 18; *Madalena,* ¶ 50.

## VI. Husband's Access to Wife's Mental Health Records and Treatment Providers

¶ 22    We next consider and reject husband's contention that the district court erred and denied him due process because he was prevented from accessing wife's mental health records and from calling her treatment providers as witnesses.

¶ 23    Before the parties settled the issues relevant to the dissolution
of their marriage, wife filed, based on her own psychotherapist-
patient privilege, a motion in limine seeking to prevent husband
from requesting documents from, and calling as witnesses, her
mental health treatment providers.  The district court granted wife's
motion.

¶ 24    Husband first argues that the district court erred in granting
wife's motion because, under section 14-10-127(3), C.R.S. 2024, he
had a statutory right to call wife's treatment providers as witnesses
given that the PRE had consulted with the treatment providers.
Section 14-10-127(1)(a)(I)(A) authorizes the court to appoint a
parenting evaluator "[i]n all proceedings concerning the allocation of
parental responsibilities."  In turn, under section 14-10-127(3),
"[a]ny party to *the proceeding* may call the evaluator and any person
with whom the evaluator has consulted for cross-examination."
(Emphasis added).

¶ 25    Here, the PPO hearing was not a proceeding concerning the
allocation of parental responsibilities.  *See* § 14-10-127(1)(a)(I)(A).
Therefore, the conditions under which husband might have had a
right to cross-examine the treatment providers under section 14-10-

127(3) did not exist, and his statutory right to cross-examine the treatment providers was not violated.

¶ 26    We also reject husband's argument that his right to due process was violated because he was prevented from calling the treatment providers as witnesses. The opportunity to be heard is an inherent element of due process and must be granted at a meaningful time and in a meaningful manner. *In re Marriage of Hatton,* 160 P.3d 326, 329 (Colo. App. 2007). Due process generally includes a right to cross-examine witnesses and an opportunity to offer rebuttal. *Aspen Props. Co. v. Preble,* 780 P.2d 57, 58 (Colo. App. 1989); *In re Marriage of Goellner,* 770 P.2d 1387, 1389 (Colo. App. 1989).

¶ 27    The essence of due process is fundamental fairness. *Van Sickle v. Boyes,* 797 P.2d 1267, 1273 (Colo. 1990). Therefore, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972); *accord Van Sickle,* 797 P.2d at 1273. We review de novo whether a party was denied due process. *People in Interest of C.J.,* 2017 COA 157, ¶ 25.

¶ 28    Here, to the extent that the PRE's conclusions were based on information obtained from wife's treatment providers, husband was afforded, and took advantage of, the opportunity to cross-examine the PRE as to the underpinnings of the PRE's conclusions.  We thus conclude that the PRE proceedings provided husband with sufficient fundamental fairness to comport with his due process rights.  *See Morrissey*, 408 U.S. at 481; *Van Sickle*, 797 P.2d at 1273.

¶ 29    Finally, even assuming, without deciding, that the district court erred by upholding wife's psychotherapist-patient privilege, husband has failed to adequately allege prejudice arising from the court's ruling.  *See People in Interest of A.C.*, 170 P.3d 844, 845 (Colo. App. 2007) (an alleged error, without a valid allegation of prejudice, is not grounds for reversal).  Husband's assertion of prejudice rests almost entirely on his speculation about what wife's mental health records might have revealed.  But such speculation doesn't constitute a sufficient basis for reversal.  *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 606-07 (Colo. App. 2007) (The plaintiffs' "speculation that they would have found relevant, useful evidence" if documents had been timely disclosed did not warrant a

new trial.); *cf. Silva v. Wilcox*, 223 P.3d 127, 137 (Colo. App. 2009) ("[S]peculations do not warrant additional discovery.").

VII. Husband's Access to the Children's Mental Health Information and Preclusion of Testimony Concerning Husband's Interactions with the Children

¶ 30    We lastly reject husband's assertion that the district court erred by (1) preventing him from accessing the children's mental health records and treatment providers and (2) sustaining objections as to testimony concerning his parenting of the children.

¶ 31    Based on wife's assertion of the children's psychotherapist-patient privilege, the district court's order granting wife's motion in limine also prevented husband from seeking documents and testimony from the children's mental health treatment providers. And when husband's counsel asked the PRE questions about husband's ability to appropriately and safely care for the children, the court sustained wife's objections to the questioning based on relevance because the children were no longer part of the PPO.

¶ 32    As to the children's mental health records and treatment providers, husband has again failed to explain, beyond mere speculation, how he was prejudiced by the district court's ruling. *See Antolovich,* 183 P.3d at 606-07; *A.C.,* 170 P.3d at 845.

14

¶ 33    And even if we assume that the district court erred by excluding testimony concerning husband's parenting of the children, we conclude that any error was harmless.

¶ 34    We will reverse an error only if the error affected a party's substantial rights, *see* C.R.C.P. 61, which occurs only if "it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself," *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (quoting *Banek v. Thomas,* 733 P.2d 1171, 1178 (Colo. 1987)).

¶ 35    Here, wife introduced significant evidence — including her own testimony, the PRE's report and testimony, a police report, photographs, and multiple audio and video recordings — in support of her contention that husband verbally and physically abused her throughout the parties' marriage.

¶ 36    For instance, in one audio recording, husband can be heard repeatedly swearing at wife, throwing objects, and then physically grabbing her while she begs him to stop and let her go.  Similarly, wife introduced photographs of marks on her neck and a bruise on her arm from incidents during which husband had physically attacked her.  Moreover, wife recalled that husband had threatened

15

to kill her "over [fifty] times," including while holding a gun, and husband conceded that he had "conditionally" threatened to kill her. Given the substantial evidence of husband's violent behavior directed at wife, we are unpersuaded that the exclusion of testimony of his interactions with the children could somehow have "substantially influenced the outcome of the case or impaired the basic fairness of the trial itself," requiring reversal. *Id.* (quoting *Banek*, 733 P.2d at 1178).

¶ 37  Relying on documents appended to his briefing, husband insists that his interactions with the children were probative of whether he was likely to be an ongoing perpetrator of "intimate partner violence," but we may not consider documents appended to briefs that do not appear in the certified record. *In re Marriage of Drexler*, 2013 COA 43, ¶ 24. And while the district court cited "intimate partner violence" when issuing the PPO, it is apparent to us that the district court primarily based the PPO on assaults and threatened bodily harm, as well as domestic abuse in the form of harassment. *See* § 13-14-104.5(1)(a); § 13-14-101(2), C.R.S. 2024 (defining domestic abuse as including "any act, attempted act, or threatened act of violence, stalking, harassment, or coercion that is

16

committed by any person against another person . . . with whom the actor . . . has been involved in an intimate relationship"); § 18-9-111(1)(a), C.R.S. 2024 (defining harassment as occurring when a person, "with intent to harass, annoy, or alarm another person, . . . [s]trikes, shoves, kicks, or otherwise touches a person or subjects [them] to physical contact"); § 18-3-204(1)(a), C.R.S. 2024 (defining third degree assault as including "knowingly or recklessly caus[ing] bodily injury to another person").

¶ 38     In sum, because the record amply demonstrates that husband engaged in a lengthy pattern of physical violence and threats against wife during the parties' marriage, any error concerning the admission of testimony as to husband's interactions with the children was harmless. *See In re Marriage of Adamson*, 626 P.2d 739, 741 (Colo. App. 1981) (evidentiary ruling was not reversible error where other cumulative evidence supported the judgment).

## VIII.  Appellate Attorney Fees

¶ 39     Wife requests an award of her appellate attorney fees on the grounds that husband's appeal is without substantial justification and is otherwise frivolous. *See* § 13-17-102, C.R.S. 2024. Although the issue is arguably close, we don't view husband's

appeal as frivolous such that an award of appellate attorney fees is appropriate. We therefore deny wife's request.

¶ 40 Wife also seeks an award of appellate attorney fees under section 14-10-119, C.R.S. 2024, which allows a court to equitably apportion, based on a disparity in the parties' financial resources, the "cost . . . of maintaining or defending any proceeding *pursuant to this article 10*." (Emphasis added.) While section 13-14-106(1)(c) authorizes the entry of protection orders in proceedings commenced under article 10 of title 14, protection orders are otherwise governed by article 14 of title 13. We therefore agree with husband that we may not award wife attorney fees under section 14-10-119 because husband's appeal of the protection order doesn't involve maintaining or defending a proceeding under article 10 of title 14. *Cf. In re Marriage of Gallegos*, 251 P.3d 1086, 1087-90 (Colo. App. 2010) (section 14-10-119 didn't provide a basis for the court to award attorney fees after denying a petition for grandparent visitation because even though grandparents pursued their visitation request by intervening in a dissolution proceeding, the basis for their visitation request was title 1 of article 19).

## IX.   Disposition

¶ 41   The order is affirmed.

JUDGE FREYRE and JUDGE MEIRINK concur.