## No. 27944

## The People of the State of Colorado v. James Arthur Taylor

(591 P.2d 1017)

Decided February 26, 1979.　　　　　　　　Rehearing denied March 19, 1979.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Sharon S. Metcalf, Assistant, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Craig L. Truman, Chief Deputy, Carol L. Gerstl, Deputy, for defendant-appellant.

*En Banc.*

MR. CHIEF JUSTICE HODGES delivered the opinion of the Court.

Defendant Taylor was charged and convicted of second-degree kidnapping, first-degree assault, first-degree burglary, aggravated robbery, attempted aggravated robbery, and menacing. The charges arose out of two incidents in which the defendant allegedly abducted a mailman, stole his mail truck and then, in the guise of delivering a package, attempted to rob the safe in a home.

On appeal, the defendant asserts three grounds for reversal: (1) the trial court improperly admitted expert handwriting testimony; (2) the Colorado Competency Statute is unconstitutional; and (3) the trial court erred in imposing consecutive sentences for a single criminal episode. We affirm the lower court's judgment.

The facts are as follows: at 10:30 a.m. on March 11, 1975, Paul Nichols, a United States Postal Service employee, was abducted at gunpoint from his mail truck by a tall man in a postal uniform, later identified as the defendant. Nichols was bound, gagged, blindfolded, and transported to the Regent Plaza Apartments parking lot. He was then placed in the back

seat of the defendant's burgundy-colored 1969 Ford Torino.

At approximately 11:00 a.m. of the same day, Clara Tubbs opened the door of her house to allow a tall man of the same race in a postal uniform to deliver a package. The defendant drew a gun, and when Mrs. Tubbs resisted, struck her on the head with the gun. Mrs. Tubbs was able, however, to call for her maid, Hazel Goode. All three proceeded to Mr. Tubbs' bedroom, where Mr. Tubbs lay ill. The defendant ordered Mr. Tubbs to lead the way to the safe. The phone rang, and it became apparent to the defendant that the burglar alarm company had been alerted. At gunpoint, the defendant ordered Mr. Tubbs out of the house and into the mail truck and drove to a parking lot of an apartment building. He then transferred postal employee Nichols from the Ford Torino into the mail truck with Mr. Tubbs, and drove away in the Torino.

## I.

During the trial, the prosecution sought to link defendant to the Tubbs' crime through a handwriting analysis of the writing on a package which the intruder had left in the house.[1] After comparing the writing on the wrapping paper of the package with two of the defendant's parole reports, a handwriting expert expressed his belief that "all of the printing was written by the same person."

The parole reports had been submitted by defendant to his parole officer, Christopher York. They contained the signature of a James Taylor at the bottom of each form. Defendant's counsel objected to the admission of the reports on the ground that they were not proven to be genuine examples of defendant's writing. Parole officer York conceded at trial that he had not seen the defendant sign the reports, and no other evidence was offered to establish that the reports were in defendant's writing. The trial court found accordingly that *"there is no evidence on which I would conclude that these are genuine examples of Mr. Taylor's handwriting"* but ruled nevertheless that the exhibits were admissible because they had circumstantial probative value.

The admissibility of comparison testimony of handwriting exemplars is governed by section 13-25-104, C.R.S. 1973:

*"13-25-104. Proof of handwriting.* Comparison of a disputed writing, *with any writing proved to the satisfaction of the court to be genuine,* shall be permitted to be made by witnesses in all trials and proceedings, and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute." (Emphasis added.)

---

[1] The writing on the package was designed to imitate a postal stamp and read "Denver, Colorado, U.S. Mail, 9:00 P.M."

This statute requires that before a disputed writing is admissible for comparison purposes, the court shall make a preliminary determination that the writing is genuine. In order for the court to make such a determination, the party offering the evidence must make a prima facie showing of genuineness based on clear and competent evidence. *See Wilson v. Scroggs,* 85 Colo. 537, 277 P. 784 (1929); *State v. O'Dell,* 46 Wash.2d 206, 279 P.2d 1087 (1955); 11 *Moore's Fed. Practice* § 901.04. In the absence of other direct or strong circumstantial evidence, the mere fact that a writing bears the purported signature of the defendant does not constitute sufficient proof that it is his genuine signature. *See United States v. Sutton,* 426 F.2d 1202 (D.C. Cir. 1969).

In the present case, the trial court admitted the parole reports as known samples of defendant's handwriting, despite its explicit factual finding that there was no evidence that the samples were genuine examples of the defendant's handwriting. While this was error, we hold it to be harmless.

This error "does not affect substantial rights" of the accused, and therefore, does not require reversal. Crim. P. 52(a). A perfect trial is an impossibility and minor mistakes will inevitably occur. Under the harmless error rule, an error in a criminal trial will be disregarded if there is not a reasonable possibility that the error contributed to the defendant's conviction. *See People v. Mills,* 192 Colo. 260, 557 P.2d 1192 (1976); *People v. Knapp,* 180 Colo. 280, 505 P.2d 7 (1973); *Early v. People,* 178 Colo. 167, 496 P.2d 1021 (1972) and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In the present case, the evidence of guilt was so overwhelming, that this error was harmless beyond a reasonable doubt. The erroneously admitted handwriting testimony went only to the issue of identity. But the defendant's identity at the scene of the crime was conclusively established by an abundance of other competent evidence. Three different eyewitnesses, Mr. and Mrs. Tubbs and Hazel Goode, identified him at a physical lineup and in court. Scott Jones witnessed the transfer of Nichols in the parking lot from a car to a mail truck and identified the car involved as a burgundy-colored 1969 Ford Torino with no license plates. The prosecution established at trial that the defendant owned a 1969 burgundy-colored Ford Torino with no license plates. Testimony was also presented that a fiber retrieved from the back seat of defendant's automobile had a common origin with a fiber contained in a pillowcase which had been left at the Tubbs' residence. Finally, Henry Pickford testified that subsequent to the crime, the defendant alluded to an involvement he had with a crime which was committed in Cherry Hills, used a mail truck, and had "turned into a mess."

## II.

█ Defendant's second basis for appeal is that section 13-90-101, C.R.S. 1973, which permits a witness to be impeached by his prior felony convictions, is unconstitutional. This section provides in part:

"[T]he conviction of any person for any felony may be shown for the purpose of affecting the credibility of such witness."

In *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978); and in *People v. Montez,* 197 Colo. 126, 589 P.2d 1368 (1979), this court explicitly upheld the constitutionality of section 13-90-101, C.R.S. 1973, against similar challenges. We find that these decisions are dispositive of the issue.

## III.

█ Defendant's final contention is that the trial court erred in ordering that the sentences for counts based on the Nichols' incident — aggravated robbery and second-degree kidnapping — run consecutively with the sentences imposed for activities at the Tubbs' residence.[2] Defendant contends that the court's sentencing was in violation of section 18-1-408, C.R.S. 1973, which, according to the defendant, requires that all sentences arising out of the same criminal episode be imposed concurrently.[3]

In *People v. Anderson,* 187 Colo. 171, 529 P.2d 310 (1974), this court interpreted section 18-1-408 (then section 40-1-508, C.R.S. 1963) to require the imposition of concurrent sentences only where the counts of which the accused was convicted were supported by *identical evidence. See also People v. Sharpe,* 183 Colo. 64, 514 P.2d 1138 (1973). In the present case, the evidence supporting the counts of aggravated robbery and second-degree kidnapping of Nichols is clearly not identical with the evidence supporting the counts relating to crimes committed in the Tubbs' residence.

---

[2] The trial court imposed a sentence of five to ten years for aggravated robbery and a sentence of not more than five years for second-degree kidnapping, which were to run concurrently with each other but consecutively with those sentences relating to activities in the Tubbs' residence. The latter sentences consisted of twenty to thirty years for first-degree assault, ten to fifteen years for first-degree burglary, not more than five years for robbery, not more than ten years for kidnapping, and not more than five years for menacing.

[3] "18-1-408(2); If the several offenses are known to the district attorney at the time of commencing the prosecution and were committed within his judicial district, all such offenses upon which the district attorney elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode. Any offense not thus joined by separate count cannot thereafter be the basis of a subsequent prosecution.

"(3) When two or more offenses are charged as required by subsection (2) of this section and they are supported by identical evidence, the court upon application of the defendant may require the state, at the conclusion of all the evidence, to elect the count upon which the issues shall be tried. If more than one guilty verdict is returned as to any defendant in the prosecution where multiple counts are tried as required by subsection (2) of this section, the sentences imposed must run concurrently."

The judgment is, therefore, affirmed.