**Timothy TEVLIN, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 85SC236.**

Supreme Court of Colorado, En Banc.

March 10, 1986.

Rehearing Denied March 31, 1986.

David F. Vela, Public Defender, Judy Fried, Deputy Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, 1st Asst. Atty. Gen., David R. Little, Asst. Atty. Gen., Denver, for respondent.

VOLLACK, Justice.

We granted certiorari to review the unpublished opinion of the court of appeals in *People v. Tevlin,* No. 83CA0783, decided April 18, 1985. The court of appeals affirmed the petitioner's conviction of the charges of second degree assault under section 18-3-203, 8 C.R.S. (1978), and child abuse resulting in serious bodily injury under section 18-6-401, 8 C.R.S. (1978). We affirm.

The issues are whether the trial court erred in allowing an expert in child abuse investigation to testify that a child witness was telling the truth, and whether any error in allowing an expert to testify to the truthfulness of another witness is harmless in this case.

I.

The petitioner was charged with child abuse and assault of his six year old son. On October 4, 1982, the petitioner's fifteen year old stepson contacted the Larimer County Sheriff's office to report a case of possible child abuse. A deputy sheriff and a social worker with the Larimer County Department of Social Services responded to the family home. Upon arrival they observed the victim who was bruised around his eyes, on his arms, feet and had a solid bruise from the middle of his back to the middle of his upper leg. The victim also had a cut on his wrist and on his head, and later examination revealed blood in his urine. When asked how the injuries occurred, the victim initially responded that he had fallen. He then reported that the injuries were the result of being hit by the petitioner with a belt. Based upon the observed injuries and the statements of the victim, the authorities removed the child from the residence.

At trial, the victim testified he received the bruises when petitioner hit him with a belt and belt buckle. The social worker from the Larimer County Department of Social Services was qualified as an expert in the field of child abuse investigation.[1]

---

1. At this point, the trial court instructed the jury    that expert witnesses can express opinions in

Defense counsel objected to the prosecuting attorney inquiring into the area of whether the victim would be prone to fabricate the source of the injuries. The court required the witness to establish a foundation for such an opinion and overruled defense counsel's objections. The social worker stated he was able to formulate an opinion as to whether or not the victim gave truthful information based on the interviews he conducted with the victim and his stepbrother, through his subsequent contact with the boys in foster homes and through consulting with the foster parents. He then testified that he believed the victim was telling the truth about the fact that he was beaten by the petitioner with the belt and the injuries occurred in the days immediately prior to its being reported.

On cross-examination, the social worker admitted he did not personally observe the beatings, but his testimony was based on what the victim told him. He further stated he had a psychological evaluation performed regarding the victim, and he had consulted with the psychologists.

The court of appeals concluded that the error, if any, in receiving the testimony was harmless because of the overwhelming evidence of the defendant's guilt in the record. The evidence included the victim's own testimony of what happened, the stepbrother's testimony, the investigating officer's observations and testimony, and the testimony of witnesses who had observed the defendant on other occasions striking

the child in such a manner that he became bruised and bloody. The court of appeals found admission of the expert's testimony was harmless beyond a reasonable doubt.

In his dissent, Judge Tursi argues credibility of a witness is solely within the province of a jury and is not the proper subject of testimony by an expert witness. He concludes the testimony went to the ultimate fact in issue of whether the petitioner had physically abused the victim and reasons that such improperly admitted evidence cannot be harmless. He would reverse the trial court and remand the matter for a new trial.

## II.

The opinion testimony of the expert witness in this case was brought out on direct examination and was stated in the form of an opinion by the expert as to a specific instance of truthfulness, rather than referring only to character for truthfulness or untruthfulness.[2] The defense inquired into prior inconsistent statements of the victim as to the identity of the person who inflicted his injuries because the victim had stated that both the mother and father had inflicted the injuries, but later said that only the father abused him. The record does not reflect that the defense directly attacked the victim's character for truthfulness.

Petitioner objects to the testimony of the social worker in this case because it related

---

subjects regarding their special knowledge, skill, or training, and it is for the jury to weigh their testimony as that of other witnesses. *See* CJI–Crim. 4:05 (1983).

2. CRE 608 provides:

(a) **Opinion and reputation evidence of character.** The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) **Specific instances of conduct.** Specific instances of the conduct of a witness, for the

purpose of attacking or supporting his credibility, other than conviction of crime as provided in 13–90–101, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

to an ultimate issue to be decided by the trier of fact,[3] that is, who inflicted the injuries upon the victim. The petitioner maintains the testimony was improper because determining the truthfulness of the victim's testimony did not require specialized knowledge.[4] The issue of whether or not the victim was telling the truth could be properly resolved by the jury, the petitioner contends, and to allow an expert to offer an opinion on that issue invaded the province of the jury.[5]

■ We conclude that the trial court erred in allowing the testimony of the expert witness stating the victim was telling the truth when he related his version of the incidents of abuse. The expert's opinion failed to refer to the witness' general character for truthfulness and instead went to the witness' truthfulness on a specific occasion. Moreover, there is insufficient evidence that the victim's character for truthfulness had been directly attacked by the defense to allow evidence in direct examination that the victim was telling the truth. Since requirements for introducing such evidence were not met in this case, the expert's opinion was not properly admissible under CRE 608. *People v. Koon,* 713 P.2d 410 (Colo.App.1985).

**3.** CRE 704 provides:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

**4.** CRE 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

**5.** In the case of *People v. Ashley,* 687 P.2d 473 (Colo.App.1984), *cert. denied,* Oct. 9, 1984, the trial court allowed a pediatrician who was qualified as an expert in the medical aspects of child abuse and neglect to testify that she did not use a rape kit in the case because she was satisfied that the child was telling the truth as to who the assailant was. On appeal, the defendant contended the expert's assessment of the truth or

**III.**

In the *Koon* case, the court of appeals concluded that a social worker's testimony as to the truthfulness of a victim's allegations against defendant overstepped the bounds of admissible character evidence. Although the defendant in *Koon* attacked the victim's character for truthfulness in his cross-examination, CRE 608(a) rendered inadmissible the expert's testimony that he thought the boy was telling the truth because it referred to a specific occasion of truthfulness. The court determined that the improperly admitted evidence was relied upon in the findings of fact made by the trial court and given significant weight. The court of appeals concluded that inasmuch as the case against the defendant was tenuous at best, the impermissible opinion testimony of the social worker expert could have affected the outcome of the trial. Therefore, the admission of such evidence was reversible error.

■ A trial court's evidentiary ruling will not be reversed where the error is harmless. *Honey v. People,* 713 P.2d 1300 (Colo.1986); *Callis v. People,* 692 P.2d 1045 (Colo.1984); *People v. Gallegos,* 644 P.2d 920 (Colo.1982); *People v. Taylor,* 197 Colo. 161, 591 P.2d 1017 (1979). Crim.P. 52(a) provides that any error, defect, irregularity or variance which does not affect

falsity of the child's claim of sexual assault, invaded the province of the jury and was grounds for reversal. The court of appeals ruled the fact that the credibility of witnesses is an issue ultimately to be determined by the jury does not in and of itself preclude an otherwise qualified expert from giving her opinion as to whether children generally have the sophistication to lie about having experienced a sexual assault. The testimony related to the inability of children in general to fabricate claims that they have been sexually assaulted, and the court noted defense counsel's extensive cross-examination as to the victim's character for truthfulness. The court concluded that the statement did not constitute error given the fact that the defendant's cross-examination opened the door to such a response by the expert witness and defense counsel failed to object. The statement in *Ashley* was elicited in cross-examination while the testimony in this case came out upon direct examination. Further, the inquiry was not directed to children in general, but specifically as to this victim.

substantial rights shall be disregarded. We noted in the *Taylor* case that a perfect trial is an impossibility and minor mistakes will inevitably occur. Under the harmless error rule, an error in a criminal trial will be disregarded if there is not a reasonable possibility that the error contributed to the defendant's conviction. *Taylor*, 197 Colo. at 164, 591 P.2d at 1019. The proper inquiry in determining a harmless error question is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *People v. Carlson*, 712 P.2d 1018 (Colo.1986); *Callis*, 692 P.2d 1045.[6]

■ In this case, the investigating deputy sheriff testified the victim told him that petitioner hit the victim with the belt. The examining physician testified that the bruises appeared to be two to four days old and the cuts were a little over twenty-four hours old. The victim in this case testified at the trial that the petitioner inflicted his injuries. Evidence of similar transactions was admitted in the case and witnesses testified that in May of 1979, they witnessed the petitioner striking the victim at a grocery store. Evidence revealed the victim had been kicked and hit in the head by the defendant.

The petitioner's version of how the victim received the injuries was that the victim inflicted the injuries upon himself with a paddle. Petitioner and his wife explained some cuts around the boy's face as a result of having fallen in the bathtub. The victim's mother testified that he was possessed by the devil and communicated with the devil. The other children in the home testified that the bruises did not exist on Saturday or Sunday, prior to the investigation of the matter on Monday. Photographs of the victim revealed extensive bruising on Monday.

In light of the overwhelming evidence of guilt produced in this case, we conclude

that the error in admitting this testimony was harmless. *Gallegos*, 644 P.2d 920; *People v. Ortega*, 672 P.2d 215 (Colo.App. 1983). The jury was properly instructed as to how to evaluate expert testimony and also received the general credibility instruction on the testimony of witnesses.[7] The jury was afforded the opportunity to judge the credibility of the victim on the witness stand, and defense counsel was afforded the opportunity to cross-examine the victim. While the admission of the opinion of the expert witness as to truthfulness of the victim was evidentiary error, we conclude the admission of this statement, when measured against all of the evidence, did not substantially influence the verdict or affect the fairness of the trial proceedings. Being harmless error, the conviction must stand as proper. Accordingly, the judgment of the court of appeals is affirmed.

LOHR, J., dissents.

ROVIRA, J., does not participate.

LOHR, Justice, dissenting:

I respectfully dissent. While I agree with the majority that the trial court erred in allowing the social worker to testify as to his opinion of the victim's truthfulness and the basis for that opinion, I am not persuaded that the error was harmless. Reversible error may not be predicated upon a ruling that improperly admits evidence unless a substantial right of the party claiming error is affected. CRE 103(a). *See also* Crim.P. 52(a). Here, the defendant has suffered prejudice to a substantial right, for the social worker's testimony directly corroborated the victim's testimony identifying the defendant as the perpetrator of the beatings, a fact not established by other independent evidence.

Before discussing the relevant evidence in detail, it is necessary to set the stage. Living in the home at the time of the

---

**6.** Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**7.** *See* CJI-Crim. 3:06 (1983).

events in question were the defendant; the victim, then six years old, who was the defendant's son; the defendant's wife; and her four children from a previous marriage. At trial, approximately six months after the events in question, those children were fifteen, thirteen, eleven and nine years of age.

The fifteen-year-old son, whom I will identify as S., returned home on a Sunday evening after having been away from the home all week and, according to his testimony, discovered that the victim, his stepbrother, had been badly bruised and cut. Left alone in the house with the boy on Monday morning, S. called the police. Pictures taken by the police on Monday morning showed the victim's face and body to be covered with bruises and cuts. On that morning, the child told the police that his injuries had been caused when he was beaten with a belt by his father. However, he also told the police, according to the testimony of two of the investigating officers, that his stepmother had hit him or caused some of his injuries as well. On the stand, the boy testified that only his father had beaten him on this occasion. He later testified that his stepmother had hit him before with her hand, that he remembered telling the police officers that his stepmother had punished or hit him, that he agreed that he was telling the truth when he said that to the officers, and that S. had never hit him.

The social worker testified that he believed the child was telling the truth not only when he said he had been beaten—testimony independently and convincingly corroborated by medical evidence and the pictures—but also when he testified that it was the defendant who administered that beating. The basis for this testimony was simply his own investigatory interviews with the victim, the other members of the family, the investigating officers, the victim's subsequent foster parents and two psychologists. The social worker's corroborating testimony constituted the only evidence directly and unequivocally identifying the defendant as the perpetrator of the crime. All other evidence that could be seen as corroborating the child's own equivocal testimony on that subject is either in conflict with other testimony, susceptible of different inferences, or remote in time to the specific episode of abuse at issue.

Fifteen-year-old S., who reported the crime, did not see the beatings. He testified that he learned of the victim's injuries when S.'s eleven-year-old brother, J., told S. when S. returned home Sunday night that the victim's body was covered with bruises. J. testified and denied that he told S. this and further denied that the victim had such bruises over his face and body on Sunday evening or Monday morning, except for a bruise on the victim's lip, explained to J. by his mother as caused by a fall in the bathtub.

S. further testified that the victim would not tell him what happened, but that S.'s mother told him that "Tim [the defendant] had gotten out of hand and I [S.] had to stay home the next day to watch [the victim]." However, the mother denied making these statements and denied that her stepson had been beaten by anyone in the family, including the defendant, at any time. The mother was emphatic that she controlled the discipline in the family and that she did not impose physical punishment because she had been a victim of abuse as a child. She strongly denied that the victim had any bruises or cuts on his face or body when she left the house on Monday morning except for a small cut on the lip from a fall in the bathtub that occurred on Saturday when she was out of the home for a short while. She stated that she required the child to stay home from school on Monday not because he was badly bruised but because he had been fighting at school, a problem she had to correct before he could return to school. She speculated that whatever bruises or cuts were on the victim when the police arrived on Monday must have been inflicted by S. after she left. The record clearly indicates the existence of tension or a conflict of some sort between S. on the one hand and his mother and the rest of the family on the other, even before the report

of the child abuse. In particular, S. testified that he had stayed away from home during the week prior to the events in question by permission of his mother, whereas his mother testified that S. was absent without permission, missed his sister's birthday party, had to be summoned home, and was to be punished by a suspension of various privileges for his disrespect for the family.

All the other members of the family who testified, i.e., the three other children of the mother, completely affirmed and supported their mother's testimony, including her testimony that their stepfather never or rarely punished or disciplined them or their stepbrother, and never physically; that their mother controlled all the discipline in the family; that she never physically punished any of the children; that the victim had not been beaten by the defendant or anyone else at any time; and that the victim was free of all but the most minor bruise or scratch on his lip when the others left the home on Monday morning. In sum, the only evidence coming from S. that related to the defendant as the perpetrator of the abuse originated from other sources, all of whom contradicted that testimony at trial.

The only other relevant evidence was the testimony from witnesses who saw the defendant strike the victim at a grocery store on three separate occasions, all more than three years prior to the events in question. While this evidence indicated that the father had a potential for child abuse at one time, and raised the permissible inference that the father was still capable of such an act, it does not establish that the father abused the child on the occasion in question.

There was no objective evidence, independent of the testimony of the witnesses, that directly identified or tended to identify the person who assaulted the child. Thus, for the jury to believe the victim's testimony that it was the defendant who beat the child, the jury *had* to resolve an issue of the credibility of witnesses whose testimony was in conflict. The social worker's testimony directly related to that crucial matter of credibility. While the evidence in the record other than the social worker's testimony might have been sufficient to support a jury verdict of guilty, it cannot be concluded with confidence that the jury would have resolved the issue of credibility in the same manner in the absence of that testimony. For that reason, the error in admitting that testimony cannot be considered harmless. I would reverse and remand for a new trial.