23CA1043 Peo v Ramirez-Pantoja 12-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1043
El Paso County District Court No. 22CR3220
Honorable William B. Bain, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jonathan Ramirez-Pantoja,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE GOMEZ
Welling and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

---

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Daniel J. Sequeira, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Jonathan Ramirez-Pantoja, appeals the judgment of conviction entered after a jury found him guilty of felony menacing and prohibited use of a weapon (reckless or negligent discharge). He contends that (1) the prosecution failed to present sufficient evidence to disprove his claim of self-defense, (2) the trial court reversibly erred by instructing the jury on exceptions to self-defense, (3) the trial court erred by denying his motion to suppress portions of officers' body camera footage, (4) the trial court erred by denying his motion to suppress the victim's identification of him, and (5) the cumulative effect of these errors requires reversal.

¶ 2 We disagree with Ramirez-Pantoja's first contention. We agree with his second contention, however, and accordingly reverse the judgment and remand the case for a new trial. We also address the third and fourth contentions as they are likely to arise on remand. Because of our disposition, we don't address the cumulative error contention.

I. Background

¶ 3 This case arises from a confrontation between Ramirez-Pantoja and the alleged victim, William Hooper.

1

¶ 4     Late one night, Ramirez-Pantoja was walking down a drainage culvert next to Hooper's apartment building.  Armed with a flashlight, a knife, pepper spray, and his unleashed dog, Hooper went down to confront Ramirez-Pantoja.  Hooper told Ramirez-Pantoja that he was trespassing and needed to leave.  Ramirez-Pantoja turned around and started backing up while holding his hands in the air.

¶ 5     All the while, Hooper's dog was barking at Ramirez-Pantoja, and Hooper continued to follow Ramirez-Pantoja back toward the street, telling him to leave.  Once in the street, Hooper continued to tell Ramirez-Pantoja to leave.  Ramirez-Pantoja then pulled out a gun and fired a few shots in the air, including one in the direction of Hooper's dog that had followed him into the street.  Neither Hooper nor his dog were injured.  Hooper returned to his apartment and called 911.

¶ 6     After initially leaving the scene, Ramirez-Pantoja was found, arrested, and charged with felony menacing and prohibited use of a weapon.  His theory of defense at trial was that he reasonably acted in self-defense based on a belief that Hooper was using or about to

2

use unlawful physical force against him.  The jury rejected that defense and found him guilty as charged.

## II.    Sufficiency of the Evidence

¶ 7    Ramirez-Pantoja contends that the prosecution presented insufficient evidence to support his convictions — specifically, to disprove his assertion of self-defense.  We disagree.

## A.    Relevant Legal Principles

¶ 8    We review claims challenging the sufficiency of evidence de novo, determining whether the evidence presented was sufficient in both quantity and quality to support the defendant's conviction. *McCoy v. People*, 2019 CO 44, ¶ 63.  In doing so, we assess whether the evidence, viewed in the light most favorable to the prosecution, supports a reasonable conclusion that the defendant is guilty beyond a reasonable doubt.  *People v. Wright*, 2021 COA 106, ¶ 29.

¶ 9    However, "we 'may not serve as a thirteenth juror' by considering whether we 'might have reached a different conclusion than the jury.'" *Thomas v. People*, 2021 CO 84, ¶ 10 (quoting *People v. Harrison*, 2020 CO 57, ¶ 33).  Thus, we will disturb the verdict only if, despite drawing every reasonable inference in favor of the prosecution, the record is unsubstantial and insufficient to

support a guilty verdict beyond a reasonable doubt. *Clark v. People*, 232 P.3d 1287, 1291-92 (Colo. 2010).

¶ 10 Again, the two charges Ramirez-Pantoja was convicted of in this case were felony menacing and prohibited use of a weapon. As relevant here, a person commits felony menacing "if, by any threat or physical action, [they] knowingly place[] or attempt[] to place another person in fear of imminent serious bodily injury . . . by the use of a firearm." § 18-3-206, C.R.S. 2025. And, as relevant here, a person commits prohibited use of a weapon if they "[r]ecklessly or with criminal negligence . . . discharge[] a firearm. § 18-12-106(1)(b), C.R.S. 2025.

¶ 11 Self-defense in defense of a person is governed by section 18-1-704(1), C.R.S. 2025, which provides, as relevant here, that "a person is justified in using physical force upon another" to defend themself from what they "reasonably believe[] to be the use or imminent use of unlawful physical force by that other person" and "may use a degree of force which [they] reasonably believe[] to be necessary for that purpose." § 18-1-704(1). Self-defense thus requires both that (1) the defendant used physical force to defend themself from what they reasonably believed to be the use or

imminent use of unlawful physical force by another person and (2) the defendant used a degree of force that they reasonably believed to be necessary for that purpose. *People v. Mosely*, 2021 CO 41, ¶ 18. A jury may reject a claim of self-defense if it finds that either of these two requirements is not satisfied or if it finds that an exception to self-defense applies. *See id.*

¶ 12    When a defendant properly raises self-defense with respect to an offense requiring intentional or knowing conduct, self-defense is an affirmative defense, meaning that it becomes an additional element of the charged offense that the prosecution must disprove beyond a reasonable doubt. *Roberts v. People*, 2017 CO 76, ¶ 22; *People v. Gray*, 2025 COA 23, ¶ 25. But when a defendant raises self-defense with respect to an offense requiring reckless or criminally negligent conduct, self-defense is not an affirmative defense; instead, it is a traverse that negates the required mental state because acting recklessly or criminally negligently is inconsistent with acting justifiably in self-defense. *People v. Pickering*, 276 P.3d 553, 556 (Colo. 2011); *People v. Luna*, 2020 COA 123M, ¶¶ 10-11; *see also* § 18-1-501(3), (8), C.R.S. 2025

(defining "[c]riminal negligence" and "[r]ecklessly"); § 18-1-704(1)

(establishing the requirements for self-defense).[1]

B.    Application

¶ 13    We conclude that the prosecution presented sufficient

evidence to disprove Ramirez-Pantoja's assertion of self-defense,

even setting aside the exceptions to self-defense on which the jury

was instructed.  In particular, the following evidence, viewed in the

light most favorable to the prosecution, supports the jury's rejection

of self-defense:

- Hooper testified and surveillance video showed that
  Ramirez-Pantoja fired a gun in the air a few times,
  including once in the direction of Hooper's dog.

---

[1] The People assert that the sufficiency of the evidence challenge "can apply only as to the felony menacing conviction (to which self-defense was an affirmative defense) and not to the prohibited use of a weapon conviction (to which self-defense was a traverse)."  We needn't decide this issue because even if Ramirez-Pantoja properly challenges the prohibited use of a weapon conviction, we conclude that the prosecution presented sufficient evidence to support his conviction on that charge.

- The video shows that Hooper turned and started running away after Ramirez-Pantoja fired one of the shots, but Ramirez-Pantoja continued to fire at least one more shot.

- Hooper testified that Ramirez-Pantoja turned toward him while firing the last shot and said, "I'm going to fucking kill you, bro."

¶ 14    Even if we were to assume, based on the evidence Ramirez-Pantoja cites, that he reasonably feared Hooper was using or about to use unlawful physical force against him, the evidence supports a finding that he used an unreasonable degree of force in response by shooting a gun a few times, shooting toward Hooper's dog, continuing to shoot even after Hooper ran away, and threatening to kill Hooper when he fired his last shot.  *See Mosely*, ¶ 18. Accordingly, the evidence was sufficient to support the jury's rejection of Ramirez-Pantoja's claim of self-defense.

### III.    Self-Defense Jury Instructions

¶ 15    Ramirez-Pantoja also contends that the trial court reversibly erred by (1) instructing the jury on the provocation exception to self-defense for the felony menacing charge and (2) instructing the

jury on the provocation and initial aggressor exceptions to self-defense for the prohibited use of a weapon charge.

¶ 16    The People concede that it was erroneous for the trial court to instruct the jury on these exceptions to self-defense. Accordingly, we review only the harmfulness of the error. We conclude that the court's error in instructing the jury on the provocation exception was not harmless and, therefore, we reverse both of Ramirez-Pantoja's convictions. Based on this disposition, we don't address Ramirez-Pantoja's contention about the initial aggressor exception.

### A.    Additional Facts

¶ 17    Over the defense's objection, the trial court instructed the jury on the provocation exception to self-defense.

¶ 18    As to the felony menacing charge, the self-defense instruction given to the jury included the following language:

> The defendant was legally authorized to use physical force upon another person without first retreating if:
>
> 1.    he used that physical force in order to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force by that other person, and

2.     he used a degree of force which he reasonably believed to be necessary for that purpose, and

3.     *he did not, with intent to cause bodily injury or death to another person, provoke the use of unlawful physical force by that other person.*

The prosecution has the burden to prove, beyond a reasonable doubt, that the defendant's conduct was not legally authorized by this defense. *In order to meet this burden of proof, the prosecution must disprove, beyond a reasonable doubt, at least one of the above numbered conditions.*

(Emphases added.)

¶ 19     As to the prohibited use of a weapon charge, the self-defense instruction included the following language:

[A] person is not justified in using physical force if . . . [,] with intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person . . . .

¶ 20     In closing argument, as the prosecutor was outlining the evidence in support of the felony menacing charge, he repeatedly argued that Ramirez-Pantoja had been trespassing when walking along the culvert. Soon thereafter, the prosecutor turned to the self-defense instruction for felony menacing, pointed out that the prosecution only had to disprove one of the three listed conditions,

9

and went through those conditions. As to the third condition — the provocation exception — he argued that "the defendant's actions did provoke Mr. Hooper to come down and ask him to leave."

## B.    Relevant Legal Principles

¶ 21    A trial court has a duty to correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions. *People v. Knapp*, 2020 COA 107, ¶ 20. However, a court shouldn't instruct the jury "on abstract principles of law unrelated to the issues in controversy, nor . . . on doctrines or principles which are based upon fanciful interpretations of the facts unsupported by the record." *Castillo v. People*, 2018 CO 62, ¶ 34 (alteration in original) (quoting *People v. Alexander*, 663 P.2d 1024, 1032 (Colo. 1983)). Thus, a trial court must determine whether there is sufficient evidence to warrant a jury instruction as to a defense and any exceptions to that defense. *Id.*

¶ 22    Under the provocation exception to self-defense, a defendant is "not justified in using physical force" against another person if the defendant, "[w]ith intent to cause bodily injury or death to another person, . . . provokes the use of unlawful physical force by that other person." § 18-1-704(3)(a).

¶ 23    When a court instructs the jury on an exception to self-defense, that exception must be "supported by some evidence." *Galvan v. People*, 2020 CO 82, ¶ 25.  Accordingly, a provocation instruction should be given only if there is evidence that (1) self-defense is at issue in the case, (2) the victim made an initial attack on the defendant, and (3) the defendant's conduct or words were intended to cause the victim to make the attack and provide a pretext for injuring the victim.  *Knapp*, ¶ 23; *see also People v. Silva*, 987 P.2d 909, 914 (Colo. App. 1999) ("In order to warrant the giving of [a provocation] instruction, the prosecution has the burden of establishing that the defendant intended to harm the victim and that he or she intended the provocation to goad the victim into attacking him or her as a pretext for injuring or killing the victim.").

¶ 24    We review de novo whether there was sufficient evidence to support an instruction.  *Castillo*, ¶ 32; *Knapp*, ¶ 21.  "In doing so, we view the evidence in the light most favorable to giving the instruction."  *Knapp*, ¶ 21.

¶ 25    We review preserved nonconstitutional trial errors — like the giving of an erroneous jury instruction — for harmless error.  *Castillo*, ¶ 56.  Under this standard, reversal is required if the error

11

affected the parties' substantial rights, meaning "the error 'substantially influenced the verdict or affected the fairness of the trial proceedings.'" *Hagos v. People*, 2012 CO 63, ¶ 12 (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

## C. Application

¶ 26    Because the People concede that it was error for the trial court to instruct the jury on the provocation exception to self-defense, we don't address whether there was sufficient evidence to support such an instruction. Instead, we presume that neither the evidence of an alleged trespass nor any of the other evidence at trial was sufficient to support such an instruction.

¶ 27    We conclude that the instructional error was not harmless as to either the felony menacing charge or the prohibited use of a weapon charge because we cannot say that the error in giving the instructions didn't substantially influence both verdicts or affect the fairness of the trial proceedings.

¶ 28    Our supreme court has warned that "superfluous instructions limiting self-defense may be prejudicial." *Castillo*, ¶ 61. For instance, "there can be prejudice from unsupported instructions because the jury is likely to try to fit facts into an erroneously given

12

instruction." *Id.* The supreme court has further warned that "errors regarding jury instructions can be 'exacerbated by the prosecution's misleading comments during its closing argument.'" *Id.* at ¶ 60 (quoting *People v. Garcia*, 28 P.3d 340, 346 (Colo. 2001)).

¶ 29    Such is the case here. The error in instructing the jury on the provocation exception was exacerbated by the prosecutor's repeated references in closing argument to Ramirez-Pantoja's alleged trespassing, followed shortly thereafter by an argument that the provocation exception applied because Ramirez-Pantoja's actions "did provoke Mr. Hooper to come down and ask him to leave." Given the repeated references to trespassing and the fact that there was no evidence of any other statements or conduct by Ramirez-Pantoja that may have led Hooper to "come down and ask him to leave," the prosecutor's argument essentially asked the jury to find that Ramirez-Pantoja had trespassed and thereby provoked Hooper to confront him within the meaning of the provocation exception. And "[t]his [argument] may have had the effect of focusing the jury on the erroneous portion of the self-defense instruction." *People v. Toler*, 9 P.3d 341, 354 (Colo. 2000).

¶ 30    Both self-defense instructions required the jury to reject Ramirez-Pantoja's claim of self-defense if the provocation exception applied.  As the prosecutor pointed out in his closing argument, the self-defense instruction for the felony menacing charge provided that "[i]n order to meet [its] burden of proof, the prosecution must disprove, beyond a reasonable doubt, at least one of the [three] numbered conditions."  Two of those conditions related to the two requirements necessary to justify an act of self-defense.  *See Mosely*, ¶ 18.  The third related to the provocation exception, requiring the jury to reject Ramirez-Pantoja's claim of self-defense if the prosecution disproved that he "did not, with intent to cause bodily injury or death to another person, provoke the use of unlawful physical force by that other person."  In other words, the instruction obligated the jury to reject the claim of self-defense, regardless of whether the two requirements to justify self-defense were satisfied, if the prosecution proved that, with intent to cause bodily injury or death to Hooper, Ramirez-Pantoja provoked Hooper's use of unlawful physical force.  And the prosecutor's argument suggested that the jury do just that, based solely on Ramirez-Pantoja's alleged act of trespassing.

14

¶ 31    Similarly, the self-defense instruction for the prohibited use of a weapon charge provided that Ramirez-Pantoja wasn't justified in using physical force if, "with intent to cause bodily injury or death to another person, he provoke[d] the use of unlawful physical force by that other person."  Thus, again, regardless of whether the two requirements to justify self-defense were satisfied, the instruction obligated the jury to reject Ramirez-Pantoja's claim of self-defense if, with intent to cause bodily injury or death to Hooper, he provoked Hooper's use of unlawful physical force through his trespass.

¶ 32    Therefore, as to both claims, we don't know which basis the jury used to reject Ramirez-Pantoja's assertion of self-defense — whether the jury found that one or both of the requirements to justify self-defense wasn't satisfied or whether the jury found that Ramirez-Pantoja's alleged trespassing had provoked Hooper to use unlawful physical force.  Given that the latter finding would be improper, as the People concede, we cannot conclude that the error was harmless, particularly given that the prosecutor's closing argument exacerbated the erroneous provocation instructions.  And we reject the People's argument that the error is rendered harmless

simply because, under the instructions, the provocation exception would apply only if Ramirez-Pantoja provoked that use of unlawful physical force *with the intent to cause bodily injury or death.* Based on the evidence presented at trial — including, in particular, the evidence that Ramirez-Pantoja was carrying a gun and that he would eventually come to shoot that gun a few times and tell Hooper, "I'm going to fucking kill you, bro" — if the jury found that Ramirez-Pantoja provoked Hooper by committing trespass, it further could have found that Ramirez-Pantoja did so with an intent to cause Hooper bodily injury or death.

¶ 33 Accordingly, we reverse the judgment of conviction on both charges, and we remand the case for a new trial on those charges.

IV. Suppression of Body Camera Footage

¶ 34 Because it is likely to arise on remand, we next consider Ramirez-Pantoja's contention that the trial court erred by denying his motion to suppress portions of the officers' body camera footage. Specifically, he argues that some of his statements shown in the footage should've been excluded because they were obtained in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436, 478-79 (1966), and that other parts of the footage should've been

excluded as either irrelevant, overly prejudicial, or improper character evidence. We disagree with both arguments.

### A. Additional Facts

¶ 35 At the start of trial, defense counsel moved to suppress portions of the body camera footage the prosecution intended to use at trial. After hearing argument from both sides and viewing the challenged footage, the trial court ruled that portions of the footage could be admitted at trial.

¶ 36 Ramirez-Pantoja points to three particular parts of the footage that he claims should have been excluded.

    (1)    The "flight clip" depicts officers approaching two individuals from a distance. As the officers tell the individuals to stay where they are and get on their knees, one of them turns and starts to run away.

    (2)    The "arrest clip," taken about a half hour after Hooper's 911 call, depicts officers approaching Ramirez-Pantoja and taking him into custody. Ramirez-Pantoja is yelling, cursing, and repeatedly using the "n-word" at officers as they walk up to him and arrest him. He also repeatedly

insists he was walking to "court" or to the "corner store" and asks what he did wrong.

(3) The "transport clip," taken about two hours after the 911 call, depicts an officer driving Ramirez-Pantoja to the police station after his arrest. Ramirez-Pantoja is repeatedly asking the officer why he was arrested, arguing that his arrest is improper, and talking about the crime of menacing he's been told he was arrested for. He again uses the "n-word" several times.

## B. Standard of Review

¶ 37 Trial courts have considerable discretion in ruling on the admissibility of evidence, and we won't disturb such rulings absent an abuse of discretion. *People v. Brown*, 2022 COA 19, ¶ 57. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable or unfair or reflects an erroneous understanding or application of the law. *Id.*

¶ 38 But when a trial court's evidentiary ruling concerns an allegation that evidence was obtained in violation of a criminal defendant's constitutional rights, it presents a mixed question of law and fact. *See People v. Thompson*, 2021 CO 15, ¶ 15. We defer

to the trial court's factual findings if they are supported by the record, but we review the constitutional implications of those facts de novo. *People v. Sanders*, 2023 CO 62, ¶ 10.

### C.    *Miranda* Challenge

¶ 39    The United States and Colorado Constitutions both guarantee individuals the privilege against self-incrimination. U.S. Const. amend. V; Colo. Const. art. II, § 18; *Sanders*, ¶ 11. To safeguard this privilege, statements procured by custodial interrogation are generally inadmissible unless officers precede their interrogation with certain warnings. *People v. Davis*, 2019 CO 84, ¶ 16. However, these warnings are required "only 'when a suspect is subject to both custody and interrogation.'" *Id.* (quoting *Effland v. People*, 240 P.3d 868, 873 (Colo. 2010)).

¶ 40    In this context, "'[i]nterrogation' refers to express questioning by a police officer as well as to 'words or actions . . . that the officer "should know are reasonably likely to elicit an incriminating response from the suspect."'" *People v. Gonzales*, 987 P.2d 239, 241 (Colo. 1999) (second alteration in original) (quoting *People v. Trujillo,* 784 P.2d 788, 790 (Colo. 1990)). In determining whether a suspect has been subjected to interrogation, we consider the totality

of the circumstances, focusing on "whether the officer reasonably should have known that [their] words or actions would cause the suspect to perceive that [they were] being interrogated, and whether those words or actions, like express questioning, could compel the defendant to overcome [their] desire to remain silent." *People v. Madrid*, 179 P.3d 1010, 1014 (Colo. 2008).

¶ 41    Ramirez-Pantoja raises a *Miranda* challenge with respect to the arrest clip. He asserts that his statements in that clip were made while he was subjected to custodial interrogation and before he was given *Miranda* warnings.

¶ 42    We disagree with Ramirez-Pantoja's assertion that he was subjected to interrogation at the time he made the statements in the arrest clip. The clip shows officers taking Ramirez-Pantoja into custody and one officer in particular getting him into a police car. The officer asks very few questions and makes very few statements likely to elicit a response at all, let alone an incriminating response. Those few questions and statements are along the lines of asking Ramirez-Pantoja — who is repeatedly talking, cursing, and asking what he did wrong — if he "want[s] to hear why this is happening," explaining that Ramirez-Pantoja matched the description of the

20

suspect in a shooting in the area and ran off when he was first approached, and asking Ramirez-Pantoja if he thought that was "suspicious." Ramirez-Pantoja answers only that he "want[s] to hear" why he is being detained and that the conduct is suspicious "to an extent." Notably, the officer doesn't ask him what he'd been doing that night, whether he'd shot a gun, or even why he'd run from officers when initially approached.

¶ 43 Because Ramirez-Pantoja wasn't subject to custodial interrogation, *Miranda* doesn't apply to the statements in the arrest clip. Accordingly, the trial court didn't err by declining to exclude the statements on *Miranda* grounds.

### D. Other Evidentiary Challenges

¶ 44 The Colorado Rules of Evidence favor the admissibility of relevant evidence unless it is prohibited by the constitution, a statute, or a rule. *People v. Hood*, 2024 COA 27, ¶ 19; CRE 402. In criminal cases, evidence is relevant if the evidence makes it more or less probable that the charged criminal act occurred, the defendant committed the act, or the defendant acted with the necessary criminal intent. *People v. Clark*, 2015 COA 44, ¶ 17; CRE 401. Yet even relevant evidence "may be excluded if its probative value is

21

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403.

¶ 45 Moreover, under CRE 404(b), evidence of other acts committed by the defendant is admissible only in limited circumstances where it relates to a material fact, is logically relevant, has a logical relevance independent of the prohibited intermediate inference that the defendant has a bad character and committed the crime charged in conformity with that bad character, and has a probative value that is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990); *People v. Vasquez*, 2022 COA 100, ¶ 75. However, these limitations don't apply if the evidence is intrinsic — that is, it is part of the charged offense, is offered as direct evidence of the charged offense, or was performed contemporaneously with the charged offense and facilitated the commission of that offense. *Rojas v. People*, 2022 CO 8, ¶¶ 44-45.

¶ 46     We conclude that the trial court acted within its discretion in overruling Ramirez-Pantoja's objections and admitting the three challenged video clips into evidence.

¶ 47     As to the flight clip, Ramirez-Pantoja argues only that it has "limited probative value." But it was within the trial court's discretion to conclude that the clip is relevant because it indicates that someone — later identified as Ramirez-Pantoja — was near the area of the incident and fled when approached by officers. Evidence of flight may be relevant to show consciousness of guilt. *See People v. Gee*, 2015 COA 151, ¶ 26.

¶ 48     As to the arrest clip, Ramirez-Pantoja argues that it is irrelevant and overly prejudicial. But it was within the trial court's discretion to conclude that this clip, taken about thirty minutes after Hooper's 911 call, is relevant to show "the demeanor of the defendant" not long after the charged offenses, as it is "probative . . . of his state of mind from earlier in the evening during his interaction with Mr. Hooper." Likewise, it was within the court's discretion to conclude that the danger of unfair prejudice is not "all that great," particularly when compared to the probative value of the evidence.

¶ 49     As to the transport clip, Ramirez-Pantoja argues that it is irrelevant, is overly prejudicial, and constitutes improper character evidence.  But, again, it was within the trial court's discretion to conclude that the clip is relevant because Ramirez-Pantoja's statements roughly two hours after the 911 call about what he was being charged with and about the crime of menacing "are generally probative of [his] state of mind from earlier in the evening."  It was also within the court's discretion to conclude that any danger of unfair prejudice doesn't "substantially outweigh[] the probative value of the statements."  Notably, the court admitted the first part of the transport clip but excluded the part after the five-minute mark due to concerns about unfair prejudice at the point when Ramirez-Pantoja "becomes especially belligerent with the police officer."  Likewise, it was within the court's discretion to conclude that the statements in the transport clip don't constitute character evidence subject to CRE 404(b) "since the discussion is about what [Ramirez-Pantoja] has been . . . arrested for" and, thus, is intrinsic to the charged offenses.  *See Rojas*, ¶¶ 44-45.

¶ 50     Finally, to the extent that Ramirez-Pantoja expresses concern about any prejudice resulting from his use of the "n-word" in the

clips, defense counsel could have requested redaction of those slurs and is free to do so on remand.

## V. Suppression of Hooper's Identification

¶ 51    We also consider, as another issue likely to arise on remand, Ramirez-Pantoja's contention that the trial court erred by denying his motion to suppress Hooper's out-of-court identification and subsequent in-court identification as impermissibly suggestive.  We aren't persuaded.

## A. Additional Facts

¶ 52    When Hooper called 911 after the incident, he described the shooter as a Hispanic male, about twenty years old, with short dark hair and minimal facial hair, and about five-foot-five or five-foot-six inches tall and 120 pounds.  He also reported that the shooter was wearing a black t-shirt, light-colored plaid shorts, and white tennis shoes.

¶ 53    When officers found Ramirez-Pantoja, they determined that he matched Hooper's physical description.  But when officers detained Ramirez-Pantoja, he was wearing orange shorts with a stripe on the side, not plaid shorts.

¶ 54    About an hour and twenty minutes after officers arrived on the scene, once Ramirez-Pantoja had been identified as a possible suspect and Hooper had indicated that he thought he could identify the shooter, officers conducted a showup. Beforehand, an officer read Hooper a department-issued advisement that warns witnesses against making an illegitimate identification.

¶ 55    An officer then drove Hooper to the area where Ramirez-Pantoja had been detained. Hooper rode in the back of a police car as it drove past Ramirez-Pantoja with the windows rolled up. Ramirez-Pantoja stood handcuffed next to a police car with multiple officers standing nearby. It was still nighttime, and the only sources of light were streetlights and headlights from officers' cars.

¶ 56    After the showup, Hooper said he was one hundred percent sure that Ramirez-Pantoja was the shooter.

¶ 57    Before trial, Ramirez-Pantoja moved to suppress Hooper's out-of-court identification and exclude any later in-court identification on the grounds that the initial identification was impermissibly suggestive and unreliable. After a hearing, the trial court denied the motion, reasoning that while the officers did "things that are impermissibl[y] suggestive," "the test is whether there is a

26

substantial likelihood of irreparable misidentification based on the totality of the circumstances and here, I don't find such a substantial likelihood." The court particularly relied on the "pretty detailed description of the suspect, the matching of the description to the defendant, and the reporting party saying he's not pretty certain, he's 100% certain that's the guy."

## B.  Relevant Legal Principles

¶ 58    We review the constitutionality of a pretrial identification procedure as a mixed question of law and fact. *People v. Singley*, 2015 COA 78M, ¶ 9. We defer to the court's findings of fact, but we may give different weight to those facts and reach different legal conclusions. *People v. Theus-Roberts*, 2015 COA 32, ¶ 7.

¶ 59    A defendant's right to due process is violated if an out-of-court identification is so impermissibly suggestive and unreliable as to "give rise to a very substantial likelihood of irreparable misidentification." *Bernal v. People*, 44 P.3d 184, 191 (Colo. 2002) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

¶ 60    One-on-one show-up identifications, like the one in this case, "are not per se violative of due process, although the procedure is viewed with disfavor because of its strong potential for unnecessary

suggestiveness." *People v. Jaquez*, 2018 COA 76, ¶ 51 (quoting *Theus-Roberts*, ¶ 8). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

¶ 61 Courts engage in a two-part analysis to determine whether an out-of-court identification violates a defendant's right to due process. *Id.* First, the defendant must prove that the identification was impermissibly suggestive. *Id.* If the defendant doesn't meet this burden, then the inquiry ends there and the identification is admissible. *Id.*; *People v. Shanks*, 2019 COA 160, ¶ 45.

¶ 62 If, however, the defense satisfies its burden, then, under the second step of the analysis, the burden shifts to the prosecution to establish that, "despite the improper suggestiveness, the identification was nevertheless reliable under the 'totality of the circumstances.'" *Bernal*, 44 P.3d at 191 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). This step includes a consideration of the following factors: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree

28

of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty; and (5) the length of time between the crime and the identification. *People v. McCants*, 2021 COA 138, ¶ 17.

### C.  Application

¶ 63     We conclude that the trial court didn't err by denying Ramirez-Pantoja's motion to suppress Hooper's out-of-court identification and exclude any later in-court identification because, even if the showup was impermissibly suggestive, it was nevertheless reliable.

¶ 64     Considering the relevant factors, Hooper's identification of Ramirez-Pantoja at the showup was reliable based on the following facts:

- Hooper was in close proximity with the shooter for several minutes and had ample opportunity to view him during their confrontation, despite it being dark outside.

- During their interaction, Hooper's attention was focused on the shooter and getting him to leave the property. Indeed, the amount of detail in the description he provided to officers demonstrates that he sufficiently observed and was focused on the shooter.

- The detailed physical description Hooper he gave officers matched Ramirez-Pantoja, even though the shorts Hooper described were slightly different than those Ramirez-Pantoja was wearing.

- Hooper said he was one hundred percent certain that Ramirez-Pantoja was the shooter.

- The showup occurred about an hour and a half after the incident.

*See id.*

¶ 65 Accordingly, Hooper's out-of-court identification of Ramirez-Pantoja at the showup was reliable under the totality of the circumstances, and the trial court didn't err by declining to suppress it.  Likewise, the trial court didn't err by declining to suppress Hooper's later in-court identification.

## VI.   Disposition

¶ 66 The judgment is reversed, and the case is remanded for a new trial.

JUDGE WELLING and JUDGE SULLIVAN concur.